UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STORTO ENTERPRISES, INC.**<br><br>**Plaintiff**<br><br>v.<br><br>**EXXONMOBIL OIL CORPORATION, et**<br><br>**al.**<br><br>**Defendants** | Case No. 10-CV-01630-WDQ |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS

Defendants ExxonMobil Oil Corporation ("ExxonMobil Oil") and Exxon Mobil Corporation ("Exxon Mobil Corp.") (collectively, "Defendants") submit this memorandum in support of their Motion to Dismiss the Complaint filed by plaintiff Storto Enterprises, Inc. ("Plaintiff").

### INTRODUCTION AND SUMMARY OF ARGUMENT

This action arises out of ExxonMobil Oil's termination of Plaintiff's service station franchise after a gas leak in February 2006 resulted in immediate closure of the station. On May 19, 2010, more than four years after the key events giving rise to the claims, Plaintiff filed a five-count complaint against both ExxonMobil Oil and its parent corporation, Exxon Mobil Corp. Although the parties entered into a one-year tolling agreement on June 12, 2009, Plaintiff's claims had already expired under applicable limitations periods. Plaintiff's claims are time barred because:

- The one-year statute of limitations provided under the Petroleum Marketing Practices Act, which preempts Plaintiff's claims, is controlling and dispositive;

- Maryland's general three-year statute of limitations bars Count I; and

- Plaintiff contractually agreed, as permissible under Maryland law, that all claims against ExxonMobil Oil not brought within 12 months are barred.

Each of Plaintiff's claims also must fail as a matter of law because Plaintiff has failed to state a claim for which relief can be granted.  Specifically:

- Count I (Fraud – Line Leak Detector) fails to allege that (1) the facts concealed were material, (2) that Exxon Mobil Corp. had a duty to disclose, and (3) fraud with particularity;

- Count II (Fraud – Buyout Agreement) fails to allege (1) materiality, (2) justifiable reliance, and (3) fraud with particularity;

- Count III (Negligent Misrepresentation) (1) alleges an unenforceable promise regarding future conduct, (2) fails to allege that it was Defendants' intent for Plaintiff to rely on any negligent assertion, and (3) fails to allege justifiable reliance;

- Count IV (Breach of Contract) fails to allege an enforceable agreement; and

- Count V (Detrimental Reliance) fails to allege either (1) a definite promise by Defendants or (2) reliance by Plaintiff.

Finally, Plaintiff's demand for punitive damages for Counts III, IV, and V must fail as a matter of law, as punitive damages are not recoverable in actions for breach of contract, negligent misrepresentation, or detrimental reliance.

## FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT

### I.    The Franchise Agreement

Plaintiff Storto Enterprises, Inc. and ExxonMobil Oil entered into a PMPA Franchise Agreement (the "Franchise Agreement") in 2004 by which Plaintiff operated an Exxon station located at 14258 Jarrettsville Pike, Phoenix, Maryland (the "Jacksonville Station").[1]  A copy of the Franchise Agreement is attached as Exhibit A.[2]  *See* Compl. at 2 and 9; Exhibit A at 8. Contrary to Plaintiff's allegations in the Complaint, and as is evidenced by the Franchise Agreement referenced therein, Exxon Mobil Corp., the parent of ExxonMobil Oil, was not a party to the Franchise Agreement. *See* Exhibit A.  The term of the Franchise Agreement was three years, beginning on November 1, 2004 and ending on October 31, 2007, unless the agreement was terminated earlier pursuant to the PMPA. *Id.* at 8.

Plaintiff agreed to comply with all applicable laws in the operation and maintenance of the Jacksonville Station:

> 9.10  Compliance with Laws; Covenants and Restrictions.  Franchise Dealer shall operate and maintain the Marketing Premises and the Businesses in compliance with all applicable Laws including those concerning the environment, hazardous substances or waste, toxic substances, right to know and occupational safety and health.

*Id.* at 20.

---

[1]  ExxonMobil accepts, as it must, the factual allegations in the Complaint for purposes of the Motion to Dismiss. By so doing, it does not admit or adopt the truthfulness of any of the allegations.

[2]  As explained *infra*, documents to which a plaintiff refers in its complaint and that are central to its claims are considered part of the complaint for purposes of a motion under Rule 12(b)(6), even if the plaintiff fails to attach them to the complaint. *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).  A court, therefore, may consider them without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.*

3

Plaintiff agreed that ExxonMobil Oil may terminate the Franchise Agreement in accordance with the PMPA. *Id.* at 30.

Plaintiff agreed that <u>any claims</u> by it against ExxonMobil Oil, <u>whether or not arising out of the Franchise Agreement</u>, would be <u>barred unless asserted</u> by the filing of a lawsuit naming ExxonMobil Oil as a defendant <u>within 12 months</u> after the complained of event, act or omission:

> 20.6   <u>Claims</u>.  All claims by Franchise Dealer whether or not arising out of this agreement are barred unless asserted by the commencement of a lawsuit naming ExxonMobil as a defendant in a court of competent jurisdiction within 12 months after the event, act or omission to which the claim relates.

*Id.* at 37.

Plaintiff further agreed to limit ExxonMobil Oil's liability with respect to claims arising out of the subject matter of the Franchise Agreement:

> 20.7   <u>Limitation of Liability</u>.  ExxonMobil is not liable to Franchise Dealer or any other person for:
>
> (a)  prospective profits or special, incidental, indirect, punitive or consequential damages in any circumstances arising out of the subject matter of this Agreement or ExxonMobil's acts or omissions relating to that subject matter....

*Id.*

Plaintiff agreed to reimburse ExxonMobil Oil for any costs and attorneys' fees incurred by ExxonMobil Oil in enforcing its rights under the Franchise Agreement:

> 20.5   <u>ExxonMobil Legal Fees and Costs</u>.  Franchise Dealer will promptly reimburse ExxonMobil on demand for all costs, fees (including attorneys and expert witness fees) and expenses incurred by ExxonMobil in enforcing its rights or remedies under this agreement.

*Id.*

EAST\43028344.3

The Franchise Agreement includes a Company Owned Dealer Operated ("CODO") Lease (the "Lease").  *See* Lease attached to Exhibit A.  Pursuant to the Lease, Plaintiff agreed to measure the gas in the tank and reconcile it daily to ensure that any leak was promptly detected:

> 5.1  Inventory Reconciliation.
>
> (a)   Franchise Dealer acknowledges that the Marketing Premises contain underground tanks for the storage of petroleum products and that the release of the Products into the environment can cause serious damage to property, soil and ground water.   To detect tank or piping leaks in order to safeguard the environment and prevent loss to either Franchise Dealer or ExxonMobil, Franchise Dealer shall measure the inventory of all underground storage tanks daily by tank sticking or other ExxonMobil-supplied measurement techniques, and reconcile the measured inventory with meter readings daily….

*See* Lease attached to Exhibit A at 8.  Plaintiff agreed that if Plaintiff failed to measure and reconcile inventory, Plaintiff waived any right against ExxonMobil Oil resulting from any environmental contamination or leak:

> (d)   If Franchise Dealer fails to properly measure and reconcile inventory, maintain records and perform other environmental protection activities as required by applicable Law, this Lease, the Agreement or any related or supplemental agreements, or as specified by ExxonMobil from time to time, Franchise Dealer waives any and all rights that Franchise Dealer may have against ExxonMobil resulting from any environmental contamination or leakage, including any claims for the value of Lost Products.  This waiver is in addition to other remedies and indemnities of ExxonMobil, including termination or non-renewal of the Agreement, the franchise and the Franchise Relationship.

*Id.*

## II.   The Gas Leak

On or about February 17, 2006, a gas leak was discovered at the Jacksonville Station.  Compl. at 13.  Plaintiff was the franchise owner and operator of the Jacksonville Station at the time.  *Id.* at 2.  Despite Plaintiff's obligations under the Franchise Agreement to measure the gas, reconcile measurements every day, and report possible leaks immediately, approximately 26,000

5

gallons of gas leaked over a period of 37 days (from January 13, 2006 to February 17, 2006) before the leak was discovered. *Id.* at 2, 3; Lease attached to Exhibit A at 8. Plaintiff alleges that it was not aware at the time that the line leak detector was defective. Compl. at 9. Plaintiff claims that Defendants concealed this fact from Plaintiff until Plaintiff was served with the Amended Complaint in the *Alban, et al. v. ExxonMobil* case on May 13, 2008, over two years after the leak. *Id.* at 4, 6, 7, 9.[3]

### III.   The Unidentified "Buy-Out" Agreement

Plaintiff alleges that after the leak was discovered, it entered into an unspecified agreement with Defendants such that Defendants would pay Plaintiff to terminate the Franchise Agreement early in exchange for certain actions by Plaintiff. *Id.* at 2. Specifically, Plaintiff alleges that in exchange for Defendants' promise to pay, it agreed to vacate the premises, enter into a Confidentiality Agreement to protect information regarding the gas leak, and cooperate with cleanup efforts. *Id.* Plaintiff alleges that it did in fact vacate the premises on February 17, 2006, the day after the leak was discovered. *Id.* at 14. Plaintiff further alleges that it entered into a Confidentiality Agreement with Defendants on March 1, 2006 as consideration for and in reliance on Defendants' promise to pay. *Id.* at 2. A copy of the Confidentiality Agreement is attached as Exhibit B. The Confidentiality Agreement, by its terms, was between Plaintiff and ExxonMobil Oil, not Exxon Mobil Corp. The Confidentiality Agreement provides that there was no binding agreement as of March 1, 2006. *See* Exhibit B. Indeed, Plaintiff and ExxonMobil Oil were simply negotiating a potential buy-out. *See id.*   The express purpose of the

---

[3] Storto's counsel in this case also represented the *Alban* plaintiffs in making this fraud claim in *Alban*. The Court may take judicial notice of the fact that Exxon Mobil received a defense verdict on the fraud count. Storto had

Confidentiality Agreement was to protect confidential information provided in connection with the negotiations, not to serve as consideration for a binding agreement:

> The parties wish to discuss the buyout of the business of Recipient EMOC. The purpose of this Agreement is to establish the confidentiality and use obligations of Recipient with respect to Proprietary information which may be furnished to Recipient in connection with the negotiations.

*Id.*

## IV.   The Tolling Agreement

On June 12, 2009, the parties entered into a Tolling Agreement concerning any claims against each other related to the Jacksonville Station. A copy of the Tolling Agreement is attached as Exhibit C. Specifically, the parties agreed to toll such claims for a period of one year, from June 12, 2009 to June 12, 2010. The parties also agreed that any claims that were time barred as of June 12, 2009 would remain time barred:

> 1.   <u>Tolling of Limitations Periods</u>: Notwithstanding any other provision of this Tolling Agreement, any applicable statute of limitations shall be tolled and suspended by this Agreement for a period of one (1) year from the effective date of this Agreement. The Parties agree that the running of any applicable statutes of limitations as to the Tolled Claims shall be deemed tolled during the period this Agreement is in effect. <u>Any claims that were time-barred as of the effective date of this Agreement shall remain time-barred and nothing in this Agreement shall operate to revive any such claims.</u> (emphasis added).

Exhibit C at 2-3.

## V.   ExxonMobil Oil's Termination of the Franchise Agreement

Plaintiff alleges that, by letter dated June 13, 2006, Defendants terminated the Franchise Agreement. Compl. at 2, 11. A copy of the June 13, 2006 letter (the "Termination Letter") is attached as Exhibit D. The Termination Letter was written on behalf of ExxonMobil Oil, the

---

separate counsel in *Alban.*

grantor of the franchise, not Exxon Mobil Corp., as Exxon Mobil Corp. was not a party to the Franchise Agreement. *See* Exhibit D. ExxonMobil Oil indicated in the Termination Letter that it was providing three-months notice of termination of the Franchise Agreement in accordance with the PMPA. ExxonMobil Oil stated that the grounds for termination were:

- Plaintiff's failure to either perform required daily inventory reconciliation or to immediately report indication or suspicion of leakage that would have been evident from properly performed inventory reconciliation;

- Plaintiff's failure to permit the designated "Key Individual" trained to comply with dealer practices to perform necessary activities regarding the management of the station without ExxonMobil Oil's knowledge or consent; and

- Plaintiff's possible violations of various Environmental statutes.

*See* Exhibit D.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is a means for testing the legal sufficiency of a complaint. *Mylon Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1059 (D. Md. 1991). Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 1832 (1989). When deciding the motion, a court must take all well-pleaded material allegations of the complaint as true. *Mylon Laboratories*, 770 F. Supp. at 1059. Courts, however, "do not accept 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'" 5A Wright & Miller *Federal Practice and Procedure: Civil 2d* § 1357 at

8

315-318 (citations omitted).  As the court explained in *Judge v. City of Lowell*, 160 F.3d 67, 77 (1st Cir. 1998) (*quoting*, *Dewey v. Univ. of New Hampshire*, 694 F.2d 1, 3 (1st Cir. 1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121 (1983)), "[t]he rule that we accept plaintiff's well-pleaded factual averments and indulge every reasonable inference hospitable to her case 'does not entitle a plaintiff to rest on "subjective characterizations" or conclusory descriptions of a "general scenario which could be denominated by unpleaded facts".'"

Where fraud is asserted, the complaint must meet more stringent pleading requirements of Fed. R. Civ. P. 9(b), which provides that "the circumstances constituting fraud or mistake shall be stated with particularity."  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (detailing pleading requirements under Rule 9(b)).  The particularity requirement in Fed. R. Civ. Proc. 9(b) is necessary "to provide the defendants with sufficient notice of the acts of which plaintiff complains to enable them to frame a response, prevent fishing expeditions to uncover imagined wrongs, and protect defendants from unfounded accusations of immoral and otherwise wrongful conduct."  *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 198 F.R.D. 560, 562 (N.D. Ga. 2000).  Stated another way, the particularity requirement serves three purposes: (1) to place defendants on notice and enable them to prepare a meaningful response; (2) to prevent the use of groundless fraud claims as a pretext to discovering wrongs, or as a strike suit; and (3) to protect defendants from frivolous suits that may damage their reputations.  *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 2003 WL 21228801, at *4 (D. Mass. May 21, 2003).

If matters outside the pleadings are presented in support of a motion to dismiss, the Court may convert the motion into a motion for summary judgment if "the proffered material, and the

9

resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action." 5A Wright & Miller *Federal Practice and Procedure: Civil 2d*, § 1366 at 559 (2001 Supp.).  Documents to which a plaintiff refers in its complaint and that are central to its claims are considered part of the complaint for purposes of a motion under Rule 12(b)(6), even if the plaintiff fails to attach them to the complaint. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); 2 *Moore's Federal Practice* §12.34[2], at 12-70 (Matthew Bender 3d Ed.); *cf. Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).  A court, therefore, may consider them without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.*  Where a plaintiff fails to introduce a pertinent document as part of the complaint, the defendant may attach the document to its motion to dismiss under Rule 12(b)(6), and the court may consider the document without converting the motion to one for summary judgment. *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).  In the event of conflict between the allegations of the complaint and such documents, the documents prevail. *Fayetteville Investors*, 936 F.2d at 1465.

EAST\43028344.3

## ARGUMENT

### I.

### PLAINTIFF'S CLAIMS MUST BE DISMISSED
### BECAUSE THEY WERE NOT TIMELY FILED

**A.    All Claims Are Preempted And Time Barred By The PMPA**

The Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*, preempts

state law claims related to the termination of a petroleum franchise where the state law conflicts

with the PMPA.  *Jimenez v. B.P. Oil, Inc.*, 853 F.2d 268, 273 (4th Cir. 1988) (the PMPA

"evinces an intent by Congress to occupy the field relating to termination and non-renewal of

petroleum franchises") (internal quotations and citations omitted)); *Huth v. B.P. Oil, Inc.*, 555 F.

Supp. 191, 193-194 (D. Md. 1983) (PMPA preempted state law claims for fraud and breach of

contract relating to termination of retail gas franchise).  In *Huth v. B.P. Oil, Inc.*, *supra*, a

franchisee sought damages against B.P. Oil on grounds of fraud and breach of contract relating

to the termination of its franchise.  B.P. Oil contended that the claims were no more than a suit

for wrongful termination governed by the PMPA.  This Court agreed and held that the state law

claims were preempted because Maryland's three-year statute of limitations applicable to the

state law claims was inconsistent with the PMPA's one-year limitations period:

> While a plaintiff may ordinarily assert various legal theories subject to different
> limitations statutes for the same set of facts, defendant argues that the PMPA
> preempts the common law claims and their generous time limits. After careful
> consideration of the relevant authorities, the Court concludes that preemption
> does exist and that § 2805(a) bars plaintiff's exclusive remedy under the PMPA.

*Huth*, 555 F. Supp. at 193.

11

Here, Plaintiff's carefully-crafted Complaint cannot mask the true nature of its claims: that Defendants wrongfully terminated Plaintiff's retail gasoline franchise. The Maryland three-year statute of limitations would generally apply to all five of Plaintiff's claims. *See Fairfax Sav. F.S.B. v. Weinberg and Green*, 112 Md. App. 587, 618, 685 A.2d 1189, 1204 (Md. App. 1996) (fraud); *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 342-43, 635 A.2d 394, 404 (Md. 1994) (negligent misrepresentation); *Millstone v. St. Paul Travelers*, 183 Md. App. 505, 511, 962 A.2d 432, 436 (Md. App. 2008) (breach of contract); *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. 698, 714, 834 A.2d 170, 179 (Md. App. 2003) (detrimental reliance). The PMPA, however, provides for a one-year statute of limitations. The state law thus conflicts with and is preempted by the PMPA, and the PMPA's one-year statute of limitations applies. *Huth*, 555 F. Supp. at 193-194.

The leak, which Plaintiff alleges occurred over a 37-day period, was discovered on February 17, 2006. In view of Plaintiff's allegation of fraudulent concealment relating to the leak detector, Plaintiff implicitly alleges that the leak detector failed to alert Plaintiff of the leak during all or part of the 37-day period. Therefore, at the very least, Plaintiff was on inquiry notice regarding their fraudulent concealment claim. The statute of limitations for Count I thus expired on February 17, 2007, long before the Tolling Agreement or the filing of the Complaint. Indeed, even if, contrary to fact and law, the limitations period for the fraudulent concealment claim (Count I) was tolled until the Amended Complaint was filed in *Alban, et al. v. Exxon Mobil Corp., et al.* (Case No. 03C06010932, Balt. City Cir. Ct.) on May 13, 2008, the one-year limitations period under the PMPA would have expired on May 13, 2009, almost one month before the parties entered into the Tolling Agreement.

EAST\43028344.3

Further, ExxonMobil Oil terminated the Franchise Agreement by letter dated June 13, 2006, which is the basis for Counts II through V. The statute of limitations thus expired as to Counts II through V on June 13, 2007, again, long before the Tolling Agreement or the filing of the Complaint. Plaintiff's claims thus are barred by the PMPA.

**B.     Count I (Fraud – Line Leak Detection) Is Barred By The General Maryland Statute Of Limitations**

Even if the PMPA's one-year statute of limitations did not apply, Count I also is barred by the applicable Maryland statute of limitations. Maryland's general three-year statute of limitations applies to Count I. *See Fairfax Sav. F.S.B.*, 685 A.2d at 1204. The leak was discovered on February 17, 2006. Count I thus expired on February 17, 2009, almost four months before the Tolling Agreement and before Plaintiff filed the Complaint.

**C.     All Claims Against ExxonMobil Oil Are <u>Contractually</u> Time Barred**

It is settled law in Maryland that in light of the public policy in favor of parties' freedom to contract, parties may agree to a provision shortening the limitations period provided, "(1) there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation." *See College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 132 Md. App. 158, 174, 752 A.2d 265, 273 (Md. App. 2000). The Franchise Agreement provides that *any* claim by Plaintiff against ExxonMobil Oil is barred unless it is brought against ExxonMobil Oil within 12 months after the event, act or omission to which the claim relates. There is no controlling statute prohibiting the shortening of the limitations period. In fact, the Court of Special Appeals has held that "the Maryland general statute of limitations does not expressly prohibit its modification…" *Id.* at 172, 752 A.2d at 272. The limitations period is the same as that set out in the PMPA, so it is presumptively reasonable.

13

Further, Plaintiff has alleged no facts suggesting that the Franchise Agreement was entered into as a result of fraud, duress or misrepresentation. As explained above, not one of Plaintiff's five claims was filed within 12 months after the alleged event, act or omission by ExxonMobil Oil. Accordingly, all claims against ExxonMobil Oil are contractually time barred and must be dismissed.

## II.

### PLAINTIFF'S CLAIMS MUST BE DISMISSED AS PLEADED BECAUSE THEY FAIL TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

### A.   Count I (Fraud – Line Leak Detection) Fails to State a Claim for Fraudulent Concealment

#### 1.   Plaintiff Failed to Allege Critical Elements of Fraudulent Concealment

In order to establish a claim for fraudulent concealment, a party must allege: (1) a duty to disclose; (2) failure to disclose a material fact; (3) intent to deceive; (4) the plaintiff's justifiable reliance upon the concealment; and (5) damages to plaintiff resulting from the concealment. *Lloyd v. General Motors Corp.*, 397 Md. 108, 138, 916 A.2d 257, 274 (Md. 2007). Plaintiff has failed to allege a requisite element of its fraud claim: that the facts allegedly concealed by Defendants were material. Accordingly, Plaintiff's fraud claim must fail as a matter of law.

#### 2.   Plaintiff Has Failed to Allege Fraud With Particularity

The Federal Rules of Civil Procedure require averments of fraud to be stated with particularity. Fed. R. Civ. P. 9(b). This requirement has been interpreted to mean that the plaintiff must "provide the details of the time, place, and contents of the false representation, as well as the identity of the person making the representation." *Heritage-Oldsmobile Imports v. Volkswagen of America, Inc.*, 264 F. Supp. 2d 282, 291 (D. Md. 2003). The Fourth Circuit

14

explains the important purposes advanced by Rule 9(b) as follows:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . Second, Rule 9(b) exists to protect defendants from frivolous lawsuits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison*, 176 F.3d at 784 (quoting *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1055, 1056-57 (S.D. Ga. 1990).

Further, a plaintiff must specify which defendant committed which wrong by setting forth with particularity each defendant's culpable conduct. *See Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 579 (E.D. Va. 2006) (holding that under Rule 9(b) "[g]rouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why, and how, be pled with specificity"); *In re Cable & Wireless, PLC*, 321 F. Supp. 2d 749, 773 (E.D.Va. 2004) ("[T]he Fourth Circuit, as well as various district courts within the Fourth Circuit, have held that group pleading goes against the grain of the particularity requirement of both the PSLRA and Fed.R.Civ.P. 9(b)"). Group pleading "is insufficient either to provide a defendant with fair notice of the claim against him or to protect a defendant from harm to his reputation or goodwill … the burden rests on the plaintiffs to enable a particular defendant to determine with what it is charged." *In re Cable & Wireless*, 321 F. Supp. 2d at 773 (internal quotations and citations omitted).

Here, Plaintiff has used group pleading throughout the entire Complaint, referring to Defendants individually only twice and then just to identify the parties to the dispute. Otherwise, Plaintiff lumps Defendants together as "Exxon" and makes blanket allegations against them both

15

as if they are one entity.  Plaintiff must put Defendants on notice as to which claims are being

made against each of them.  Plaintiff may contend that both Defendants committed each of the

acts or omissions alleged in the Complaint, but such a claim is belied by the documents referred

to in the Complaint.  For example, Plaintiff alleges that "Exxon" entered into the Franchise

Agreement and "Exxon" issued the Termination Letter, where Exxon Mobil Corp. clearly did

not.  It is impossible to determine which of the Defendants Plaintiff alleges was responsible for

each allegation.  Plaintiff thus has failed to satisfy the particularity requirement of Rule 9(b).

**B.     Count II Fails to State a Claim for Fraud**

       **1.     Plaintiff Has Failed to Allege Materiality**

In order to establish a claim for fraudulent misrepresentation, a party must allege: (1) a

false representation; (b) made with the knowledge of its falsity, or in reckless indifference to the

truth; (c) with the intent of defrauding the plaintiff; (d) justifiable reliance by the plaintiff; and

(e) damages caused by the defendant's fraudulent statement.  *Heritage*, 264 F. Supp. 2d at 291.

As with Count I, Plaintiff has failed to allege that the factual misrepresentations were material.

Accordingly, Plaintiff's fraud claim must fail as a matter of law.

       **2.     Plaintiff Has Failed to Allege Justifiable Reliance**

Further, Plaintiff does not allege any actual and reasonable action by Plaintiff in reliance

on the alleged misrepresentation.  Although Plaintiff alleges that it vacated the premises and

signed a Confidentiality Agreement in reliance on Defendants' promise to pay for the early

termination of the franchise, the documents belie this claim.  Plaintiff alleges it vacated the

premises weeks before signing the Confidentiality Agreement.   And the Confidentiality

Agreement indicates that the parties were still negotiating.

### 3.    Plaintiff Has Failed to Allege Fraud With Particularity

Plaintiff also has failed to satisfy the requirements of Rule 9(b) in pleading Count II. Plaintiff bases its fraudulent misrepresentation claim on the general allegation that "shortly after discovery of the leak" John Bednash and "other Exxon management personnel" generally promised to pay Plaintiff for terminating the franchise in exchange for a confidentiality agreement and vacating the premises. Plaintiff has failed to allege the time and place of this alleged promise or any facts related to the promises made by the persons other than Mr. Bednash. Plaintiff does not allege whether the management personnel are employees of ExxonMobil Oil or Exxon Mobil Corp., whether ExxonMobil Oil or Exxon Mobil Corp. would pay, what amount was agreed to be paid, or when the payment would be made. Indeed, as explained above, Plaintiff's allegations are wholly devoid of specificity, as Plaintiff relies upon group pleading. Accordingly, Plaintiff's fraud claim does not meet the requirements of Rule 9(b). *See Heritage*, 264 F. Supp. 2d at 291 (holding that Rule 9(b) was not satisfied where the plaintiff only generally alleged that the defendant "gave assurances to the Plaintiffs" that the defendant would uphold its promise).

### C.    Count III Fails to State a Claim for Negligent Misrepresentation

In order to establish a claim for negligent misrepresentation, a party must allege: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that plaintiff will act on the statement; (3) the defendant knows that plaintiff will probably detrimentally rely on the statement; (4) the plaintiff justifiably takes action in reliance on the statement; and (5) defendant's conduct proximately causes damages to the plaintiff. *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337, 439 A.2d 534, 539 (Md. 1982).

Representations regarding future conduct of the party making the representations are not actionable under a theory of negligent misrepresentation. *Heritage*, 264 F. Supp. 2d at 291 (dismissing plaintiff's negligent misrepresentation claim because it was based on a promise for future conduct).

Plaintiff's negligent misrepresentation claim is based on the allegation that Defendants represented that they would pay Plaintiff for terminating the franchise early. This is a promise regarding *future* conduct and cannot be the basis for a claim for negligent misrepresentation.

Further, Plaintiff has failed to allege two requisite elements of negligent misrepresentation. First, Plaintiff has failed to allege that Defendants intended for Plaintiff to rely or act on the alleged negligent assertion. Second, as explained above, Plaintiff does not allege any actual and reasonable action by Plaintiff in reliance. Accordingly, Plaintiff has not stated a claim for negligent misrepresentation.

**D.    Count IV Fails to State a Claim for Breach of Contract**

In order to establish a claim for breach of contract, a party must allege that the defendant owed the plaintiff a contractual obligation and that defendant breached that obligation. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (Md. 2001). "Acceptance of an offer is requisite to contract formation, and common to all manifestations of acceptance is a demonstration that the parties had an actual meeting of the minds regarding contract formation." *Cochran v. Norkunas*, 398 Md. 1, 23, 919 A.2d 700, 713 (Md. 2007).

Under Maryland law, an agreement to agree is generally unenforceable. *Id.* at 21, 919 A.2d at 712-13. Accordingly, "[a] court cannot enforce a contract unless it can determine what it is." *First Nat. Bank of Maryland v. Burton, Parsons & Co., Inc.*, 57 Md. App. 437, 450, 470

18

A.2d 822, 829 (Md. App. 1984) (internal citations and quotations omitted).  The question of whether a complaint plausibly alleges an enforceable contract or merely an agreement to agree is determinable as a matter of law.  *MTBR LLC v. D.R. Horton, Inc.*, 2008 WL 3906768 at * 8 (D. Md. Aug. 22, 2008) (noting that under Maryland law, "the interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law").

Plaintiff does not allege facts establishing the plausible existence of an enforceable contract, but, rather, at best, an unenforceable agreement to agree.  The facts alleged by Plaintiff establish that, between February 17, 2006 and June 13, 2006, the parties engaged in a process of negotiation that culminated, not in a meeting of the minds, but in the termination of the franchise by ExxonMobil Oil.  Plaintiff alleges the following course of negotiation:

- February 17, 2006:  Plaintiff discovers the gas leak and vacates the premises.

- Shortly after discovering the leak, Defendants allegedly promise to pay Plaintiff an indefinite sum at an undetermined time to terminate the franchise in exchange for Plaintiff's confidentiality, cooperation with cleanup efforts and vacation of the property.

- March 1, 2006:  Plaintiff executes a confidentiality agreement with Defendants [actually, ExxonMobil Oil] that indicates that the parties still are in the process of negotiating: "The parties wish to discuss the buyout of the business of Recipient by EMOC.  The purpose of this Agreement is to establish the confidentiality and use obligations of Recipient with respect to Proprietary Information which may be furnished to Recipient in connection with the negotiations."

- June 13, 2006:  Defendants [actually ExxonMobil Oil] terminate the franchise without compensating Plaintiff.

While Plaintiff alleges that Defendants offered to pay for the termination of the franchise and that Plaintiff accepted, such an assertion on its own is not enough.  This allegation represents the sort of "legal conclusion" the Supreme Court has held is "not entitled to the assumption of truth."  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  Further, Plaintiff's allegation is

contradicted by the very documents Plaintiff relies upon in the Complaint. *See Proctor v. Metropolitan Money Store Corp.*, 579 F. Supp. 2d 724, 735 (D. Md. 2008) (for the purposes of a motion to dismiss, "the actual contents of a written instrument attached to the complaint prevail over the conflicting characterizations by a plaintiff"). Indeed, Plaintiff alleges that it vacated the premises and then entered into the Confidentiality Agreement as part of the agreement it seeks to enforce. Plaintiff vacated the premises, however, before executing the Confidentiality Agreement. The Confidentiality Agreement expressly indicates on its face that the parties were simply negotiating and had not yet entered into a binding agreement. Plaintiff has not and cannot allege that a meeting of the minds occurred at some point thereafter. At best, Plaintiff has alleged an unenforceable agreement to agree in the future about the terms of such an agreement. Plaintiff's breach of contract claim thus fails as a matter of law.

**E.      Count V Fails to State a Claim for Detrimental Reliance**

In order to state a claim for detrimental reliance, a party must allege: (1) that a clear and definite promise was made; (2) that the promisor reasonably expected his or her promise would induce action or forbearance by the promisee; (3) that the promise induced actual and reasonable action or forbearance by the promisee; and (4) a resulting detriment which can only be avoided by the enforcement of the promise. *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166, 674 A.2d 521, 532 (Md. 1996). Plaintiff has failed to allege two requisite elements. First, Plaintiff has failed to allege the existence of a clear and definite promise by Defendants. Indeed, Plaintiff has alleged merely a promise to pay an indefinite amount of money at an undetermined date in the future.

As explained above, Plaintiff also does not allege any actual and reasonable action by

20

Plaintiff in reliance.  Accordingly, Plaintiff's detrimental reliance claim must fail.

## III.

### PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES FOR COUNTS III, IV OR V

Plaintiff requests the recovery of punitive damages for all counts within the Complaint. It is settled law in Maryland, however, that punitive damages may not be awarded for claims of negligent misrepresentation, breach of contract, or detrimental reliance. *See Ellerin v. Fairfax Sav., F.S.B.,* 337 Md. 216, 235, 652 A.2d 1117, 1126 (Md. 1995) (holding that punitive damages are not available in suits based on negligent misrepresentation); *Allstate Indem. Co. v. Parson,* 2010 WL 2163869, at *2 (D. Md. May 26, 2010) ("[W]here actual malice is shown, punitive damages may be awarded in a tort action but not in an action for breach of contract.") (citations omitted); *Orteck Intern. Inc. v. TransPacific Tire & Wheel, Inc.*, 2006 WL 2572474, at *26 (D. Md. Sept. 5, 2006) ("Damages recoverable under a claim of detrimental reliance are carefully circumscribed; the plaintiff may recover only those specific expenditures made in reliance upon the defendant's promise") (citations omitted).  Accordingly, Counts III, IV and V, if not dismissed, should be amended to reflect the law of Maryland.

### CONCLUSION

For the reasons stated herein, the Complaint should be dismissed, with prejudice.

21

Dated: June 25, 2010

Respectfully submitted,

John E. Griffith, Jr., Esquire
Michelle J. Dickinson, Esquire
William O. Mandycz, Esquire
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland   21209
Tel:   (410) 580-3000

James Sanders, Esquire
Thomas H. Dundon, Esquire
NEAL AND HARWELL, PLC
150 Fourth Avenue, North
Suite 2000
Nashville, TN   37219
Tel:   (615) 244-1713

*Attorneys for Defendants*
*ExxonMobil Oil Corporation and*
*ExxonMobil Corporation*

22

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of June, 2010, I electronically filed the Defendants' Motion to Dismiss, Memorandum in support thereof, and proposed Order with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Robert J. Weltchek
> Kristopher A. Mallahan
> WELTCHEK MALLAHAN & WELTCHEK
> 2330 West Joppa Road, Suite 203
> Lutherville, Maryland 21093
>
> *Attorneys for Plaintiff Storto Enterprises, Inc.*

_____
John E. Griffith, Jr.

23