# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

STANDARD OF REVIEW....................................................................................................2

ARGUMENT........................................................................................................................6

    I.    Statute of Limitations.................................................................................................6

        A.  Plaintiff's Complaint was filed in the Circuit Court for Baltimore County on May 19, 2010, well before the limitation dates for each of the five causes of action.......................................................................................6

        B.  PMPA preemption is limited and does not apply to State-law causes of action unrelated to termination of the franchise agreement.......................9

        C.  Paragraph 20.6, the contractual provision altering the statute of limitations is void and unenforceable...........................................................14

            1.  Paragraph 20.6 of the Franchise Agreement is invalid because it conflicts with §2805(f) of the PMPA, a controlling statute.........15

            2.  Paragraph 20.6 of the Franchise Agreement is invalid because it is the result of fraud.......................................................19

            3.  Paragraph 20.6 of the Franchise Agreement is invalid because it is unreasonable..............................................................21

    II.    Plaintiff's Complaint Satisfies the Federal Pleading Requirements Under Any Interpretation..................................................................................22

        A.  Counts I and II properly state claims for Fraud.............................................26

        B.  Count III properly states a claim for Negligent Misrepresentation............31

        C.  Count IV properly states a claim for Breach of Contract..............................33

        D.  Count V properly states a claim for Detrimental Reliance...........................36

    III.    Plaintiff may claim punitive damages for Count III.............................................37

CONCLUSION...................................................................................................................38

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STORTO ENTERPRISES, INC.       *

      Plaintiff,              *

v.                         *     Civil Case No.:  <u>WDQ-10-CV-1630</u>

EXXONMOBIL OIL CORPORATION, *et al.*  *

      Defendants.           *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**<u>PLAINTIFF, STORTO ENTERPRISES, INC.'S, MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

      The Plaintiff, Storto Enterprises, Inc., by and through its undersigned attorneys, Robert J. Weltchek, Kristopher A. Mallahan, and Weltchek Mallahan & Weltchek, LLC, hereby submits the following Memorandum in Support of Plaintiff's Opposition to Defendants, ExxonMobil Oil Corporation and ExxonMobil Corporation's Motion to Dismiss, and in support, states as follows:

**<u>INTRODUCTION AND SUMMARY OF ARGUMENTS</u>**

      Defendants' have filed a Motion to Dismiss under Federal Rule 12(b)(6) alleging that the Plaintiff has failed to state a claim upon which relief may be granted.  Despite Defendants' attempts to argue the contrary, *none* of the causes of action pled by the Plaintiff arise out of the termination of the franchise agreement between the parties.  All claims are valid common law causes of action that were timely filed pursuant to the applicable Maryland three-year statute of limitations and were sufficiently pled under any interpretation of the Federal pleading Rules.  When read in the light most favorable to the Plaintiff, there can be no

question that Defendants' Motion to Dismiss must be denied.  In support of its Opposition, Plaintiff's arguments are as follows:

I.      <u>All Plaintiff's claims were timely filed</u>

      A.  All Plaintiffs claims were timely filed pursuant to the applicable Maryland three-year statute of limitations

      B.  The PMPA's limited preemption does not apply to Plaintiff's claims

      C.  Paragraph 20.6 of the Franchise Agreement is void and unenforceable

          1.  Paragraph 20.6 is invalid as it as it conflicts with §2805(f) of the PMPA

          2.  Paragraph 20.6 is invalid as it is a result of the fraud

          3.  Paragraph 20.6 is invalid as it is unreasonable

II.     <u>All Counts of Plaintiff's Complaint satisfy the Federal pleading requirements</u>

      A.  Counts I and II properly state claims for Fraud

      B.  Count III properly states a claim for Negligent Misrepresentation

      C.  Count IV properly states a claim for Breach of Contract

      D.  Count V properly states a claim for Detrimental Reliance

III.    <u>Plaintiff's have a valid claim for punitive damages for Count III</u>

**STANDARD OF REVIEW**

The Defendants have submitted their Motion to Dismiss, pursuant to Federal Rule 12(b)(6), alleging that the Plaintiff has failed to state a claim upon which relief can be granted. The function of the court in deciding a motion to dismiss under Rule 12(b)(6) is to "determine whether a *complaint* is legally sufficient, not to weigh the evidence that might be presented at trial." *Inn Chu Trading Co., Ltd. v. Sara Lee Corp.,* 810 F.Supp. 501, at FN 13 (S.D.N.Y. 1992).

The courts have long recognized that "the function of pleading under the Federal Rules is to give fair notice of the claim asserted so as to enable the adverse party to answer and prepare for trial. It has been held that a generalized summary of the case affords fair notice and that is all that is required." *Mueller v. Rayon Consultants, Inc.,* 170 F.Supp. 555, 558 (D.C.N.Y. 1959) (citing *Continental collieries, Inc. v. Shober,* 130 F.2d 631 (3rd Cir. 1942)). When reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "a complaint must be read with great generosity." *Bentley v. Northshore Development, Inc.,* 935 F.Supp. 500, 502 (D.Vt. 1996) (citing *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir. 1985)). "Taking plaintiff's allegations as true, the Court must construe the complaint in light most favorable to plaintiff, and must draw all inferences in plaintiff's favor." *Id.* (citing *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989)). Further, "...a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

The burden rests with the moving party on a motion pursuant to Federal Rule 12(b)(6) and the courts have consistently echoed their disfavor for such motions. The "movant on motion to dismiss for failure to state claim sustains a very high burden..." and the "obvious explanation for this heightened, and almost insurmountable, standard is that discovery usually discloses many facts that are not available absent an in depth search for the truth..." *Douglas v. Evans,* 888 F.Supp. 1536, 1542 (M.D. Ala. 1995) (abrogated on other grounds). "As a primary objective of the legal system is to obtain a determination on the merits, rather than a dismissal based on the pleadings, motions to dismiss for failure to state a

claim pursuant to Rule 12(b)(6) are generally viewed with disfavor"[1]. *Cabo Distributing Co, Inc. v. Brady*, 821 F.Supp. 601, 608 (N.D.Cal., 1992).  Further, the courts have held that such motions under 12(b)(6) "have been characterized as 'mere formal motions directed only to the face of the complaint.'  As a general rule, they are not favored and should be granted sparingly and with caution only where it appears to a certainty that no set of facts could be proven at trial which would entitle a plaintiff to any relief."  *Dann v. Studebaker-Packard Corp*, 288 F.2d 201, (C.A.6 1961).  This disfavor is based on long-established federal policy of civil litigation to decide cases on proofs rather than pleadings. *Caldwell Trucking PRP Group v. Spaulding Composites, Co., Inc.,* 890 F.Supp 1247 (D.N.J. 1995).

As this Court is well aware, any affirmative defenses, such as the statute of limitations and contractual limitation of remedies, are generally not amenable to resolution on a motion to dismiss pursuant to 12(b)(6).  The courts have held that "...it is well settled that 'plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint[s],'" and that the "burden rests with the defendant to affirmatively plead 'any...matter constituting an avoidance or affirmative defense.'" *Ventrassist Pty Ltd. v. Heartware, Inc.,* 377 F.Supp.2d 1278, 1286 (S.D.Fla., 2005)(citing *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980)); Fed.R.Civ.P. 8(c).  "For this reason, courts have repeatedly held that 'the existence of an affirmative defense [generally]

---

[1] See also: *Indeck Power Equipment Co. v. Jefferson Smurfit Corp.,* 881 F.Supp. 338 (N.D.Ill. 1995) (Dismissals for failure to state claim are not favored, and only question is whether relief is possible under any set of facts that could be established); *Airline Car Rental Inc. v. Shreveport Airport Authority,* 667 F.Supp. 293 (W.D.La. 1986)(Motion to dismiss for failure to state a claim is not favored and should rarely be granted, resolution on merits being preferred to disposition on technical grounds of failure to state a claim).

will not support a rule 12(b)(6) motion to dismiss for failure to state a claim.'" *Id.* at 1286-1287 (citing *Fortner v. Thomas,* 983 F.2d 1024, 1028 (11th Cir. 1993); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.,* 177 F.3d 1212, 1220 n. 5 (11th Cir.1999)(noting that defendants' waiver argument did not provide basis to dismiss complaint because waiver is an affirmative defense); *In re Am. Online, Inc.,* 168 F.Supp.2d 1359, 1367 (S.D.Fla.2001) (because contractual limitation of remedies is an affirmative defense, breach of contract claim could not be dismissed on this ground).[2]

The courts have further illuminated their position regarding affirmative defenses pled as a motion to dismiss for failure to state a claim in specific instances; most notably and relevantly, with regard to the statute of limitations. "Since the court cannot consider materials outside the pleadings for Rule 12(b)(6) purposes, and since the applicability of doctrines related to filing deadlines often depends on matters outside the pleadings, whether a claim is time-barred is 'not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Ranch Realty, Inc., v. DC Ranch Realty, LLC,* 614 F.Supp.2d 983, 987 (D.Ariz. 2007)(citing *Cervantes v. City of San Diego,* 5 F.3d 1273, 1276 (9th Cir.1993).[3] "Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Nader*

---

[2] See also *Laverty v. Massad,* 661 F.Supp.2d 55 (D.Mass. 2009)(Traditionally, because affirmative defenses must be proved by the defendant, it is inappropriate to raise these defenses on a motion to dismiss; rather, the defenses are to be stated generally in the answer to the complaint, and then determined later on summary judgment or trial); *Beuster v. Equifax Information Services,* 435 F.Supp.2d 471 (D.Md., 2006)(A motion to dismiss for failure to state a claim is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses, and an affirmative defense may only be considered if it clearly appears on the face of the complaint).

[3] See also *Sargent v. Genesco, Inc.,* 352 F.Supp. 66, 77 (M.D.Fla., 1972) "It should be noted that motions to dismiss based upon untimely filing of an action are not generally favored, since a limitation defense is not among those enumerated in Rule 12(b), Federal Rules of Civil Procedure."

*v. The Democratic Nat. Committee*, 555 F.Supp.2d 137 (D.D.C. 2008)(citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir. 1996)). "Rather, the court should grant a motion to dismiss only if the complaint on its face is *conclusively* time-barred." *Id.* (emphasis added). Additionally, "[s]ince the applicability of the statute of limitations usually involves questions of fact for the jury, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3rd Cir. 1985) *abrogated on other grounds by, Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984 (1997). [4]  The courts have equally held that "[c]ontractual limitation of remedies is an affirmative defense, and it is *not* ground upon which consumers' complaint can be dismissed." *In re America Online, Inc.*, 168 F.Supp.2d 1359, 1367 (S.D.Fla., 2001).

## ARGUMENT

I.    **Statute of Limitations**

    A.  **Plaintiff's Complaint was filed in the Circuit Court for Baltimore County on May 19, 2010, well before the limitation dates for each of the five causes of action.**

The Maryland three-year statute of limitations applies to all five of Plaintiff's claims. §5-101, Ct. & Jud. Pro. See also *Fairfax Sav. F.S.B. v. Weinberg and Green*, 112 Md. App. 587, 618, 685 A.2d 1189, 1204 (Md. App. 1996) (fraud); *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 342-43, 635 A.2d 394, 404 (Md. 1994) (negligent misrepresentation); *Millstone v. St. Paul Travelers*, 183 Md. App. 505, 511, 962 A.2d 432, 436 (Md. App. 2008) (breach of

---

[4] See also *In re Uni-Marts, LLC,* 405 B.R. 113, (Bkrtcy.D.Del., 2009)(Whether Pennsylvania's two-year statute of limitations applied to bar convenience store buyer's fraudulent inducement claims against seller and its president <u>could not be decided on motion to dismiss, given factual dispute as to when, for purposes of discovery rule tolling limitations period, buyer discovered or through reasonable diligence should have discovered existence of claims.</u>) (emphasis added)

contract); *Supik v. Bodie, Nagle, Dolina, Smith & Habbs, P.A.*, 152 Md. App. 698, 714, 834 A.2d

170, 179 (Md. App. 2003) (detrimental reliance).  Generally, the cause of action is said to

"accrue" on the date of the wrong.  *Atwell v. Retail Credit Co.*, 431 F.2d 1008, 1010 (C.A. Md.

1970).  Section 5-203 of Courts and Judicial Proceedings, however, provides that a cause of

action is not deemed to accrue until the plaintiff "discovered, or by the exercise of ordinary

diligence should have discovered the fraud" of the adverse party, which kept the

knowledge of the cause of action from the plaintiff. §5-203, Ct. & Jud. Pro.

In the instant case, Count I is a fraud claim regarding the EECO 3000 line leak

detection equipment used at the Jacksonville Exxon station. (Complaint ¶40 - 45),

Specifically, it is alleged that the Defendants intentionally and fraudulently concealed the

systemic defectiveness of the line leak detection equipment.  The facts concerning this

claim – including the Defendants' installation of EECO 3000 systems at service stations

around the country (Complaint ¶12), the "tens of thousands of catastrophic alarms" which

occurred throughout the United States from the late 1990's through 2006 (Complaint ¶9),

and the Defendants' knowledge of the unreliability and defectiveness of the EECO 3000 and

practice of ignoring the EECO 3000 leak alarms (Complaint ¶10) – were culled by a team of

lawyers in *Alban, et al v. ExxonMobil*.  To gather these facts, the plaintiffs' lawyers, with all

the powers of discovery at their disposal, examined thousands upon thousands of internal

documents provided by Exxon, to which Plaintiff would never have had access.  A summary

of the facts discovered were contained in the plaintiffs' Amended Complaint in *Alban*, which

was filed on May 13, 2008.  This date constitutes the earliest possible date that the Plaintiff

in the instant case could have, with "reasonable diligence," discovered the Defendants'

fraud. *Fred Ezra Co. v. Psychiatric Institute of Washington, D.C.*, 687 A.2d 587, 592 (D.C. 1996).

The Defendants argue that upon the discovery of the gasoline leak at the Jacksonville Exxon station on February 17, 2006, "Plaintiff was on inquiry notice regarding their fraudulent concealment claim." (Mot. Dis. ¶12).  It requires an enormous logical leap to say that knowledge of a single gasoline leak at the Jacksonville Exxon station put the Plaintiff "on inquiry with notice of all facts" concerning the Defendants' intentional and fraudulent concealment of the systemic defectiveness of the EECO 3000 line leak detection equipment used at Exxon stations across the United States.   *HRW Systems, Inc. v. Washington Gas Light Company*, 823 F.Supp. 318, 350 (internal quotations and citations omitted) (D.Md. 1993) (emphasis added).  Furthermore, it took a team of lawyers with all the powers of discovery to unearth the facts of this fraud.  No level of diligence by the Plaintiff, ordinary or otherwise, would have disclosed such deep-seated fraud by the Defendants prior to the May 13, 2008, filing of the Amended Complaint in *Alban*.  Applying Maryland's three-year statute of limitations, the Complaint in the instant case was filed nearly a year before the May 13, 2011, limitation date.  §5-101 & §5-203, Ct. & Jud. Pro. Count I is therefore, not time-barred.

Counts II through V concern the oral contract between Plaintiff and the Defendants. As such, the following statute of limitations discussion is the same for all four counts.  As per the oral contract, which was separate and independent from any previous agreement between the parties, the Defendants agreed to pay the fair market value of Plaintiff's business interest in the Jacksonville Exxon station in exchange for Plaintiff's confidentiality,

cooperation with the press, assistance during the initial clean-up operation, and vacation of the premises. (Complaint ¶¶33, 34). On June 13, 2006, the Defendants sent a letter to Plaintiff terminating the Franchise Agreement. Thereafter, the Defendants advised Plaintiff that it would not pay as per the oral contract, even though the Plaintiff had already satisfied the terms of the agreement, including hiring a competent broker to determine the fair market value of the Plaintiff's business interest. (Complaint ¶35).

Consequently, the earliest date that Defendants' breached the oral contract and that Plaintiff knew or could have known of Defendants' breach of contract was June 13, 2006. On June 12, 2009, the parties entered into a Tolling Agreement concerning any claims against each other related to the Jacksonville Exxon station, which tolled such claims for a period of one year, from June 12, 2009 to June 12, 2010. Applying Maryland's three-year statute of limitations, plus one year per the Tolling Agreement, the Complaint was filed nearly a month before the June 12, 2010 limitation date. Therefore, Counts II through V are not time-barred.

**B. PMPA preemption is limited and does not apply to State-law causes of action unrelated to termination of the franchise agreement.**

The Defendants incorrectly argue in their Motion to Dismiss that all of the Plaintiff's claims are time-barred pursuant to the one-year statute of limitations provided in the Petroleum Marketing Practices Act (PMPA). As the PMPA does not preempt any of the Plaintiff's claims, the one-year statute of limitations is inapplicable. Therefore, the Maryland three-year statute of limitations applies to all five of Plaintiff's claims, and as described above, all causes of action were timely filed.

The PMPA, as articulated in the recent Supreme Court case, *Mac's Shell Service, Inc. v. Shell Oil Products Co.*, "establishes minimum federal standards governing <u>the termination and nonrenewal of petroleum franchises</u>." 559 U.S. __ - 08-240 (2010)[5] (emphasis added). Justice Alito, writing for the unanimous Court, continued, "In enacting the PMPA, Congress did not regulate every aspect of the petroleum franchise relationship but instead federalized only the two parts of that relationship with which it was most concerned:  the circumstances in which franchisors may terminate a franchise or decline to renew a franchise relationship." *Mac's Shell* at 12.  The limited scope of PMPA preemption is drawn from and explicitly addressed in provision, 15 U.S.C. §2806(a)[6]:

> To the extent that any provision of this subchapter <u>applies to the termination (or the furnishing of notification with respect thereto), or to the nonrenewal (or the furnishing of notification with respect thereto)</u> of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) or any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

(emphasis added).  Citing this provision, the Court concluded, "Congress left undisturbed state-law regulation of other types of disputes between petroleum franchisors and

---

[5] Due to the recency of this Supreme Court decision, this case does not have a standard reporter citation and the page numbers indicated are from the available printout.  A copy of the decision can be provided at the Court's request.

[6] Because PMPA has an express provision defining its preemptive scope, there is no reason to look beyond the statute and "there is no need to infer congressional intent to pre-empt states law from substantive provision of the legislation." *Cipollone v. Leggett Group, Inc.*, 505 U.S. 504, 11 S.Ct. 2608, 2618 (1992).  Furthermore, "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not preempted." *Id.*

franchisees (pre-empting only those state laws governing franchise terminations or nonrenewals)." *Mac's Shell*, 12.

The limited preemptive power of the PMPA is supported by abundant case law. See *Sekler v. Star Enterprise*, 124 F.3d 1399, 1405 (11th Cir. 1997)("The PMPA was written to create a uniform federal law regarding the procedures for terminating and non-renewing petroleum franchises, and the preemption provision furthers this purpose. The PMPA was not written to allow petroleum franchisors <u>to hide behind the preemption provision to avoid tort, contract or fraud suits brought by franchisees</u> with regard to actions that do not constitute termination or non-renewal of a franchise or notification of such action.") (emphasis added); *Unocal Corp. v. Kaabipour*, 177 F.3d 755, 768 (9th Cir. 1999) ("The preemptive scope of the PMPA is limited; it does not reach any state laws which only incidentally affect franchise termination or nonrenewal."); *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 861 (7th Cir. 2002)("Congress made clear its intent for franchisees to resort to remedies outside the PMPA context for redress of violations of the statute when a nonrenewal is not at issue."); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 504 (Colo. 1995) ("Congress did not intend 'to preempt all state regulation through passage of the PMPA.'"); *Davis v. Gulf Oil Corporation*, 485 A.2d 160, 169 (D.C. Cir. 1984)("We read this language to be an explicit statement of Congress' intent to 'occupy the entire field' of franchise termination and nonrenewal, <u>without displacing local law which governs other matters related to service station franchises</u>.") (emphasis added).

The Defendants, in an attempt to rebut the overwhelming precedent establishing the limited preemptive scope of the PMPA, cited only two cases: *Jimenez v. BP Oil, Inc.*, 853

F.2d 268 (4th Cir. 1988) and *Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191 (D.Md. 1983), with analysis limited to *Huth*. In *Huth*, the franchisee brought a common law breach of contract claim, asserting that the franchisor "terminated his dealership in violation of an express contractual term requiring advanced notice," as well as two common law fraud claims relating to this termination of the franchise agreement. *Huth*, 555 F.Supp. at 192. Citing Congress' specific intent to preempt conflicting state laws dealing with the termination of franchise relationships, the Court found that Huth's common law claims relating to and expressly based on the termination of the franchise agreement were preempted. *Huth*, 555 F.Supp. at 193.

In the instant case, contrary to the facts presented in *Huth*, none of the claims relate to the wrongful termination of the franchise agreement. Count I is based on the Defendants' intentional and fraudulent concealment of the systemic defectiveness of the EECO 3000 line leak detection equipment, which was used at the Jacksonville Exxon Station operated by Plaintiff. Counts II-V are derived from a separate and independent oral contract between the Plaintiff and Defendants. These state-law claims represent precisely the "other types of disputes between petroleum franchisors and franchisees" that the U.S. Supreme Court found were not preempted by Congress in *Mac's Shell*. (12)

Moreover, not only is *Huth* inapplicable to the case at bar, but the decision is also outdated. Significant changes were made to the PMPA as part of the 1994 Amendments, eleven years after *Huth* was decided. The most relevant amendment to the case at bar is the addition of a new subsection (f) to section 105 [15 U.S.C. §2805], which states:

(f)(1)  No franchisor shall require, as a condition of entering into or renewing the franchise relationship, a franchisee to release or waive-

   (A)      any right that the franchisee has under this title or other Federal law; or

   (B)      <u>any right that the franchisee may have under any valid and applicable State law.</u>

(emphasis added).  This amendment, by making it clear that waiver of applicable State law is not allowed, reaffirms the limited preemptive scope of the PMPA.

In sum, the instant case is neither brought under the PMPA, nor are the PMPA's termination and nonrenewal provisions implicated in any way.  The Defendants readily admit that absent PMPA preemption, each of Plaintiff's causes of action are subject to Maryland's three-year statute of limitations.  (Mot. Dis. ¶12).  See also *Fairfax Sav. F.S.B. v. Weinberg and Green*, 122 Md. App. 587, 618, 685 A.2d 1189, 1204 (Md. App. 1996) (fraud); *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 342-43, 635 A.2d 394, 404 (Md. 1994) (negligent misrepresentation); *Millstone v. St. Paul Travelers*, 183 Md. App. 505, 511, 962 A.2d 432, 436 (Md. App. 2008) (breach of contract); *Supik v. Bodie, Nagle, Dolina, Smith & Habbs, P.A.*, 152 Md. App. 698, 714, 834 A.2d 170, 179 (Md. App. 2003) (detrimental reliance).  As recounted in Section I,A above, the Plaintiff's Complaint was filed in the Circuit Court for Baltimore County on May 19, 2010, well before the limitation dates for the causes of action.  Therefore, the Defendants' argument that Plaintiff's claims are time-barred pursuant to the PMPA should be rejected.

C. **Paragraph 20.6, the contractual provision altering the Statute of Limitations, is void and unenforceable.**

Defendants argue incorrectly in their Motion to Dismiss that all of Plaintiff's Claims are contractually time barred, pursuant to paragraph 20.6 of the Franchise Agreement, which states:

> 20.6 <u>Claims</u>. All claims by Franchise Dealer whether or not arising out of this agreement are barred unless asserted by the commencement of a lawsuit naming ExxonMobil as a defendant in a court of competent jurisdiction within 12 months after the event, act or omission to which the claim relates.

In Maryland, though parties may agree to a contractual provision that modifies limitations that would otherwise apply, this right is not absolute. See *College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 132 Md. App. 158, 174, 752 A.2d 265, 273 (Md. App. 2000). Indeed, a contractual provision that modifies limitations is invalid when a) there is a controlling statute to the contrary; b) where the provision is subject to defenses such as fraud, duress, or misrepresentation; and c) when the provision is unreasonable. *Id.*

In the instant case, the provision at issue is invalid because a) it is contrary to section 2805(f) of the PMPA, b) it is the result of fraud, and c) it is unreasonable. Furthermore, pursuant to Paragraph 20.9 of the Franchise Agreement any provision found to be invalid is severable and the unaffected provisions remain in full force and effect. Therefore, Paragraph 20.6 should be severed from the Franchise Agreement. Absent the invalid contractual limitation, the Maryland three-year statute of limitations applies to all five of Plaintiff's claims and, as described above, all causes of action were timely filed.

1.   **Paragraph 20.6 of the Franchise Agreement is invalid because it conflicts with §2805(f) of the PMPA, a controlling statute.**

Where the provision of a contract modifying the statute of limitations is contrary to a controlling statute, it is invalid. *College of Notre Dame*, 132 Md. App. at 174.  In the case at bar, the contractual provision at issue, Paragraph 20.6, is in direct conflict with the PMPA and is therefore invalid.

Section 2805(f)(1), which was one of the significant changes made to the PMPA by the 1994 Amendments, provides:

> (f)(1)  No franchisor shall require, as a condition of entering into or renewing the franchise relationship, a franchisee to release or waive-
>
> (A)   any right that the franchisee has under this title or other Federal law; or
>
> (B)   any right that the franchisee may have under any valid and applicable State law.

(emphasis added).

This statute conflicts directly with Paragraph 20.6 of the Franchise Agreement as it forces the franchisee to waive rights that the franchisee has under Maryland State law. Paragraph 20.6 sets the accrual date of any cause of action as the day of the "event, act, or omission" and bars all claims not filed within 12 months of such date.  This is contrary to Maryland's three-year Statute of Limitations. *Md. Code Courts & Judicial Proceedings Article 5-101*.  Furthermore, Maryland's discovery rule allows accrual of a cause of action to begin when discovered, or when, with reasonable diligence, the cause of action should have been discovered, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party." *Md. Code Courts & Judicial Proceedings Article 5-203* (emphasis added).

Consequently, Paragraph 20.6 of the Franchise Agreement attempts not only to significantly shorten the franchisee's limitations period for "all claims...whether or not arising out of this agreement," but also eliminates Plaintiff's right to Maryland's discovery rule. Such a "release or waiver" of franchisee's valid rights under Maryland law is prohibited by §2805(f)(1) of the PMPA. Furthermore, the Franchise Agreement states that it will not diminish the rights of the Plaintiff under the PMPA. As expressed in Section 20.1(a):

> THE PARTIES ALSO ACKNOWLEDGE THAT THIS AGREEMENT IS SUBJECT TO THE PMPA, AND NOTHING CONTAINED HEREIN IS INTENDED TO REDUCE THE RIGHTS OF EITHER PARTY UNDER THAT LAW.

Clearly, Section 2805(f)(1) of the PMPA controls and, therefore, the contrary contractual limitation is invalid.

A similar, but distinguishable issue was addressed in *Korangy v. Mobil Oil Corporation*, 84 F.Supp.2d 660 (D. Md. 2000). In that case, the franchisor and franchisee presented similar arguments as in the instant case. The franchisor argued that their franchisee's breach of contract claim was time-barred by a nearly identical contractual provision to the one in this case, limiting the time to file a claim to "12 months after the event, action or inaction to which such claim relates." *Id.* at 666. The franchisee argued that the provision was in conflict with Maryland State law allowing for a three-year statute of limitations on common law breach of contract claims and, therefore, violated Section 2805(f) of the PMPA.

In *Korangy*, the Court acknowledged that the contractual limitation would be invalid if it were in conflict with Maryland's three-year Statute of Limitations. Under the facts of

that case, however, the U.C.C. governed the breach of contract because the "predominant purpose of the agreement is to govern the sale of Mobil's oil." *Id.* at 667. Since the U.C.C. allows for the shortening of a limitations period by contract to no less than 12 months, there was no conflict of law and thus no violation of Section 2805(f) of the PMPA. Even though the Court upheld the one-year contractual limitation by relying on the U.C.C., the Court's thorough analysis revealed that waiver or release of a franchisee's right to Maryland's three-year Statute of Limitations would violate Section 2805(f) of the PMPA.

In the instance case, the Plaintiff brings five counts arising out of two factual scenarios. The first factual scenario is with regard to Defendants' fraudulent concealment of the defective nature of the EECO 3000 (Count I). Clearly, this claim for fraud sounds in tort, not contract, and is governed by the Maryland three-year Statute of limitations and Maryland discovery rule, rather than the U.C.C. The second factual scenario deals with the formation and breach of a separate and independent oral contract in which the Defendants agreed to pay the fair market value of Plaintiff's business interest in the Jacksonville Exxon station in exchange for Plaintiff's confidentiality, cooperation with the press, assistance during the initial clean-up operation, and vacation of the premises (Counts II-V). The Plaintiff is not claiming a breach of the Franchise Agreement. Clearly, the purpose of the oral contract was to provide monetary payment to Plaintiff in exchange for services rendered. The oral agreement was certainly not for any sale of goods and, therefore, the U.C.C. does not apply to this contract and there is no correlative one-year statute of limitations to uphold the Paragraph 20.6 contractual limitation. As contemplated in

*Korangy*, Paragraph 20.6 conflicts with Maryland's three-year statute of limitations and is, therefore, invalid.

This was precisely the holding in *Coast Village, Inc. v. Equilon Enterprises*, LLC, an analogous case in which a contractual provision in the PMPA franchise agreement shortened the limitations period provided under California State law. 163 F.Supp.2d 1136 (C.D.Cal. 2001). The Court found that the contractual limitation conflicted with the Statute of Limitations prescribed by California State law. Such a conflict was in violation of §2805(f) of the PMPA and, therefore, the contractual limitation was invalid.

In sum, §2805(f) of the PMPA conflicts with the Paragraph 20.6 contractual limitation. Maryland law clearly states that such a conflict invalidates the provision. *College of Notre Dame*, 132 Md. App. at 174. Furthermore, Paragraph 20.9 of the Franchise Agreement allows for the severability of any provision found invalid. Therefore, absent the invalid contractual limitation, Maryland's three-year statute of limitations applies to all five of Plaintiff's claims.[7]

In anticipation of Defendants' Reply Memorandum, the Plaintiff would like to reiterate that it is not asserting any claims under the PMPA. The Plaintiff is simply availing itself of the protections the PMPA provides with regards to the formation and contents of the Franchise Agreement. In *Charles Davidson and CD & PWS Enterprises, Inc. v. ConocoPhillips Company*, the franchisor raised the anticipated argument of the Defendants', and the Court responded as follows:

---

[7] In Defendants' Memorandum in Support of Motion to Dismiss, on page 12, they state, "The Maryland three-year statute of limitations would generally apply to all five of Plaintiff's claims."

Defendant argues first that the PMPA does not apply since, as this Court ruled earlier on defendant's motion to dismiss, plaintiff is not asserting claims under the PMPA. However, it does not follow that a party needs to sue under the PMPA to be protected by the PMPA. Nor has defendant cited any authority that would permit defendant to violate the PMPA if it is not also being sued under the PMPA." *Charles Davidson and CD & PWS Enterprises, Inc. v. ConocoPhillips Company*, 2009 WL 2044651 (N.D.Cal. 2009).

> **2.    Paragraph 20.6 of the Franchise Agreement is invalid because it is the result of fraud.**

Where the provision of a contract modifying the statute of limitations is the result of fraud, it is invalid. *College of Notre Dame*, 132 Md. App. at 174. Furthermore, where a challenged provision of a contract is the result of fraud, it must be severed from the contract at large, for the "principle goal in the interpretation of contracts is to effect the intention of the parties." *Kasten Constr. Co., Inc. v. Rod Enters., Inc.,* 268 Md. 318, 328, 301 A.2d 12 (1973); *McIntyre v. Guild, Inc.,* 105 Md.App. 332, 355, 659 A.2d 398 (1995). It is clear that where one party was unaware of the significance of a provision that they agreed to, as a result of the other party's concealment of material information, the provision cannot represent the intention or will of both contracting parties.

The Plaintiff has unambiguously pled on the face of the Complaint that Defendants were aware of the widespread defectiveness of the EECO 3000 as early as 1998. Certainly, by the time Defendants entered into the 2004 Franchise Agreement with the Plaintiff, they were fully aware of the plethora of issues that made the EECO 3000 defective. The Defendant designated the EECO 3000 as a "Critical Safety Device'" as pled in Plaintiff's Complaint, making concealment of the systems defectiveness clearly material. Furthermore, Defendants concealed this information from the Plaintiff at the time the

Franchise Agreement was signed in 2004, with the intent to induce Plaintiff's reliance. The Plaintiff did rely on this concealment in signing the Franchise Agreement, which contained Paragraph 20.6.

Paragraph 20.6 of the Franchise Agreement sets the date of accrual of any claim at the day of the "event, act, or omission." Therefore, the 12-month contractual statute of limitations, outlined in Paragraph 20.6, would have began to run on the same day the contract was signed, pursuant to the material omissions outlined above. Were this provision to stand, Defendants would be rewarded for not only concealing the defectiveness of the EECO 3000 at the time of signing the Franchise Agreement, but would be further rewarded for perpetrating fraud for twelve additional months, barring Plaintiff from ever bringing a fraud claim. Since Plaintiff was unaware of Defendants' material omission at the time of signing the Franchise Agreement, Paragraph 20.6 does not represent the "intention of the parties" at the time the agreement was signed.

Maryland recognizes the freedom of parties to contract, though the freedom is not without limits. Where the "challenged agreement is patently offensive to the public good, that is where the 'common sense of the entire community would...pronounce it' invalid" it cannot stand. *College of Notre Dame*, 132 Md. App. at 173; citing *Maryland-National Capital Park & Planning Comm'n v. Washington Nat'l Arena*, 282 Md. 588, 606, 386 A.2d 1216 (1978). To enforce Paragraph 20.6 of the Franchise Agreement, rewarding the Defendants for defrauding the Plaintiff, not only violates common sense but it destroys the fundamental concepts of candor and full disclosure that are essential to parties continuing confidence in the broad freedom to contract. Since the contractual limitation was the result

of fraud, it is invalid and unenforceable. Absent the invalid contractual limitation, the

Maryland three-year statute of limitations applies to all five of Plaintiff's claims, which

were timely filed.

> **3.      Paragraph 20.6 of the Franchise Agreement is invalid because it is unreasonable.**

Where the provision of a contract modifying the statute of limitations is

unreasonable, the provision is invalid. *College of Notre Dame*, 132 Md. App. at 174.   Though

in *College of Notre Dame* the contract was not found to be unreasonable, the Court severely

limited its holding:

> We do not purport, by virtue of our holding, to address the validity of
> contractual suit limitations in all cases.  In this case, there is no suggestion of
> duress, fraud, misrepresentation, or unequal bargaining power.  The result
> might well be different in those circumstances.  Additionally, our holding is
> limited to a suit for repair costs by a contracting party.   We are not
> addressing claims for damages to person or property sustained by a
> contracting party...

*College of Notre Dame*, 132 Md. App. at 178.   Clearly, whether a provision is

unreasonable is a fact driven inquiry.

In the instant case, four characteristics of the Paragraph 20.6 contractual limitation

render the provision unreasonable, and, therefore, invalid.  First, Paragraph 20.6 limits "all

claims" of the franchisee, "whether or not arising out of the Franchise Agreement."  This is

in stark contrast to the challenged provision in *College of Notre Dame*, where only claims

arising out of the contract were limited.  Such an endlessly broad scope bars claims that

were not and could not have been contemplated and bargained for by the parties.  For

example, suppose an intoxicated employee of the Defendants, driving the Defendants' truck

21

within the scope of employment, recklessly turned south on Jarrettsville Pike and crashed into the station, rendering half of the pumps unusable. Presumably the contractual limitation would apply to any claim arising from the above scenario, certainly an unforeseeable and an unreasonable limitation.

Second, the Paragraph 20.6 contractual limitation is an unreasonable provision because it sets both accrual and limitation dates. Again, this is in stark contrast to the challenged provision in *College of Notre Dame*, which simply set the accrual date for all contract-based claims at the date of substantial completion of construction, from which the Maryland three-year statute of limitations would begin to run. By setting an accrual date at the day of an "event, act or omission" and then dramatically shortening the limitations period to 12 months, Paragraph 20.6 does not allow sufficient time for the Plaintiff to discover potential claims and have them timely filed.

Third, the Paragraph 20.6 contractual limitation is an unreasonable provision because it only limits the potential claims of the franchisee, allowing the franchisor additional time to pursue their claims, pursuant to Maryland law and the Maryland three-year statute of limitations. This is significantly different than the challenged provision in *College of Notre Dame*, where the contractual limitations applied equally to the claims of both parties.

Fourth, as is evidenced by the one-sided and self-serving provisions of the Franchise Agreement, it was not the result of negotiations between parties with equal bargaining power. Rather, it was carefully crafted by the Defendant and presented on a "take it or leave it" basis to Plaintiff.

For the foregoing reasons, the Paragraph 20.6 contractual limitation provision is unreasonable, thus invalid and unenforceable.  Absent the invalid contractual limitation, the Maryland three-year statute of limitations applies to all five of Plaintiff's claims, which were timely filed.

## II.   Plaintiff's Complaint Satisfies the Federal Pleading Requirements Under Any Interpretation

Defendants' secondary argument in their Motion to Dismiss alleges that the Plaintiff has failed to state a claim for which relief may be granted on *all* counts.  (Mot. Dis. §II).  The Defendants' motion is based on misrepresentations of both Plaintiff's Complaint and the notice pleading requirements of the Federal Rules.   Rule 8 of the Federal Rules of Civil Procedure provides the following:

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:
>
> **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> **(2)** <u>a short and plain statement of the claim showing that the pleader is entitled to relief</u>; and
>
> **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed.R.Civ.P. 8(a)(emphasis added).

The courts have consistently held that the purpose of Rule 8(a)(2) is to give notice to the other party and not to formulate issues or fully summarize facts involved. *Clausen & Sons, Inc., v. Theo. Hamm Brewing Co.,* 395 F.2d 388, (8th Cir. 1968); *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103 (1957)(abrogated on other grounds).  As discussed above, "[t]he

23

complaint is to be liberally construed in favor of the plaintiff, and its material allegations taken as true." *Fednav Ltd. v. Sterling Intern.,* 572 F.Supp. 1268 (D.C.Cal. 1983)(citing *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848 (1968). "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Conley at* 47-48.

Rule 8 was not intended, as Defendants would have this Court believe, to create a minefield for Plaintiffs that would summarily dispose of valid claims.  Conversely, "[t]he Federal Rules of Civil Procedure indicate a policy to disregard technicalities and form and to determine the rights of litigants on the merits." *Holley Coal Co. v. Globe Indem. Co.,* 186 F.2d 291, 295 (4th Cir. 1951).  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *U.S v. Houghham*, 364 U.S. 310, 317, 81 S.Ct. 13, 18 (1960)(citing Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103 (1957)(abrogated on other grounds)).  Further, "[t]he intent and effect of the rules is to permit the claim to be stated in general terms; the rules are designed to discourage battles over mere form of statement and to sweep away the needless controversies which the codes permitted that served either to delay trial on the merits or to prevent a party from having a trial because of mistakes takes in statement." *Nagler v. Admiral Corporation,* 248 F.2d 319, 324 (2nd Cir. 1957).  "The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense necessary for recovery.  A complaint is sufficient if it contains

'allegations from which an inference can be drawn that evidence on these material points

will be introduced at trial.'" *Wright v Caspari,* 779 F.Supp. 1025, 1027 (E.D.Mo. 1992)(citing

5 Wright & Miller, *Federal Practice and Procedure:* Civil, Sec. 1216 at 120-123 (1969). The

courts have made clear that it is the facts pled that make a cause of action valid under

12(b)(6) and not the magical powers of any specific words provided in a complaint.

Notably, "in a complaint, a plaintiff *is* required to allege *facts* that support a claim for

relief"... highlighting that specific words associated with causes of action "are not

talismanic, for they are but a legal conclusion; it is the alleged *facts* supporting those words,

construed liberally, which are the proper focus at the motion to dismiss stage." *Bass v. E.I.*

*DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003)(emphasis added).[8]

> Federal Rule 9(b) states:
>
> Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party
> must state with particularity the circumstances constituting fraud or
> mistake. Malice, intent, knowledge, and other conditions of a person's mind
> may be alleged generally.

The courts have made clear that "Rule 9(b) must be read in conjunction with Rule 8 which

contains the provisions creating the "notice" pleading which is the hallmark of the federal

rules. Rule 9(b) requires more than mere notice in cases of fraud; nevertheless, it is not to

---

[8] Additional decisions clearly show that Plaintiff's Complaint is well pled and far exceeds the sufficiency standards provided by Rule 8.  See *Conergy AG v. MEMC Electronic Materials, Inc.,* 651 F.Supp.2d 51 (S.D.N.Y. 2009)(A claim in facially plausible, and would survive a motion to dismiss for failure to state a claim, when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged); *Clorox Co. v. Chromium Corp.,* 158 F.R.D. 120 (N.D.Ill. 1994)(Federal courts simply require notice pleading and thus, district court must construe pleadings liberally in ruling on motion to dismiss for failure to state a claim; complaint need not specify correct legal theory or point to right statute to survive motion to dismiss); *Buchanan v. Consolidated Stores, Corp.,* 125 F.Supp.2d 730 (D.Md. 2001)(Neither vagueness nor lack of detail is a sufficient ground on which to grant a motion to dismiss).

be construed and applied in a vacuum devoid of Rule 8's existence." *Oliver v. Bostetter*, 426 F.Supp. 1082, 1089 (D.C.Md. 1977)(citing *Tomera v. Galt,* 511 F.2d 504 (7th Cir. 1975)). "In balancing these two policies, 'the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare an adverse pleading.'" *Windsor Associates, Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.C.Md., 1983)(citing C. Wright and A. Miller, *Federal Practice and Procedure,* §1298 at 415 (1969)). Further Rule 9(b), "as it has been construed by the courts, does not require that fraud be pleaded with absolute and detailed particularity. All that is required is that the circumstances constituting the alleged fraud be pleaded with sufficient definiteness so as to advise the adversary of the claim which he must meet." *U.S. v. Gill*, 156 F.Supp. 955, 957 (D.C.Pa. 1957).

A.    **Counts I and II properly state claims for Fraud**

With regards to both Counts, Defendants erroneously argue that Plaintiff's failure to use the word "material" within its fraud claim, somehow mandates that it fails as a matter of law. (Mot. Dis. §II A (1)). This is an absolutely incorrect assertion of the law and undermines the Federal policy that pleadings are based on facts alleged and not legal conclusions or terms of art. In the criminal context, this principle has been directly addressed by multiple federal courts, including the United States Supreme Court. As the court has stated, "[t]he word "fraud" is a 'legal term of art.'" *U.S. v. Stewart*, 151 F.Supp.2d 572, 584 (E.D.Pa., 2001)(citing *U.S. v. Cefaratti*, 221 F.3d 502, 507 (3rd Cir. 2000). Further, "At common law, 'the well-settled meaning of 'fraud' required misrepresentation or concealment of material fact.'" *Id.* (citing *Neder v. U.S.*, 527 U.S. 1, 22, 119 S.Ct. 1827

(1999)).  In *Stewart*, the Court held that "...the superseding indictment repeatedly charges that Stewart made false and fraudulent representations and promises.  Because the word "fraudulent" clearly encompasses the notion of materiality, the superseding indictment cannot be considered deficient." *Id.*  The Court further concluded that "by any reasonable construction, the superseding indictment identifies misrepresentations that can only be characterized as material even though the word 'material' is not used. *Id.*  In *Neder*, the Court explained that 'a matter is material if...a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in transaction in question.'" *Id.* (citing *Neder* at 22 n.5 (quoting Restatement (Second) of Torts § 538 (1976))).  It is clear that based on these decisions and the law discussed *infra*, it is the facts pled that are relevant to the sufficiency of the claim, and not the use of any talismanic, magic, or conclusory words.[9]  Replete through Plaintiff's Complaint are detailed and descriptive facts and allegations describing fraudulent, intentional, and deceitful behavior on the part of the Defendants.  Viewing the Complaint in any light, let alone in the light most favorable to the Plaintiff, any reasonable person would view the facts concealed by or made by the Defendants as material.[10]  Therefore, Defendants' argument regarding the

---

[9] See also *United States v. White,* 2004 WL 2612017, *12 (E.D.Pa.2004) (rejecting defendant's argument that the grand jury did not allege materiality as an element of wire services fraud and thus, the charges must be dismissed.  Relying on *Neder,* district court agreed that "the word 'materiality' need not appear in the Indictment and that the Indictment sufficiently alleged facts that are material within the meaning of *Neder.*

[10] Similarly, the Court in *Stewart* concluded, "There can be no doubt that a reasonable person would attach importance to the above misrepresentations.  An insurance agent contemplating selling policies for Summit, a customer considering purchasing a policy from Summit, a current policyholder making payments to Summit, or a regulator charged with overseeing Summit's compliance with the law all would find the false statements and representations Stewart made important, relevant, and material.  Clearly, an "inference of materiality" arises, especially when we

omission of the word "material" is meritless and is not grounds for dismissal under

12(b)(6).

Defendants erroneously argue that Plaintiff failed to allege justifiable reliance

regarding Count II. (Def. Mot. §II. (B) 2). Specifically, Defendants argue that "Plaintiff does

not allege any actual and reasonable action by Plaintiff in reliance on the alleged

misrepresentation." *Id.* Defendants' argument bears no logical or legal relationship to the

Complaint. The Plaintiff's Complaint states:

> Storto did rely on the promise, vacating the Premises on or about February
> 17, 2006, executing a Confidentiality Agreement on March 1, 2006, hiring an
> attorney, and obtaining a valuation of the business. <u>Such reliance was
> justified</u>, and Storto suffered damages as a direct and proximate result.

(Complaint ¶ 49) (emphasis added). In addition, Plaintiff states:

> <u>Also in furtherance of the buy-out agreement, Exxon required and received</u>
> Storto's cooperation in connection with the press. Exxon provided Storto
> two separate statements of approved language if the press inquired about
> the massive gas spill at the Premises. Storto declined to speak on the record
> to the press and referred inquiries to a telephone number provided by Exxon.
> Furthermore, Exxon specifically asked Storto to remove all personal property
> from the Premises and to remain on the Premises several weeks after
> February 21, 2006 to assist in granting access to the Premises. <u>Storto did as
> instructed by Exxon, all in reliance on Exxon's promise to buy-out Storto's
> interest.</u>

(Complaint ¶ 49)(emphasis added). Defendants' argument fails to acknowledge the above.

Further, any argument regarding the reasonableness of any actions taken by the Plaintiff is

a question of fact, and not law, as subject to a 12(b)(6) motion. As such, Plaintiff has more

---

"construe the indictment liberally." *Cefaratti,* 221 F.3d at 507. "We therefore reject Stewart's
contention that the superseding indictment was insufficient." (emphasis added).

than sufficiently alleged justifiable reliance in Count II and, therefore, Defendants' argument should be dismissed.

Despite an extensive and detailed Complaint filed by the Plaintiff that goes well beyond the sufficiency requirements of Rule 8 and 9(b), Defendants finally argue that Counts I and II should be dismissed for failure to plead with particularity. The crux of Defendants' argument is that the use of the term "Exxon" to describe the conduct of both Defendants does not provide the requisite particularity.[11]   However, Plaintiff's Complaint makes it clear that it alleges both Defendants are responsible for the complained of conduct. Where both Defendants are responsible, the use of the term "Exxon" to describe both parties does not usurp the requirement of pleading with particularity, as acknowledged by Defendants. See (Mot. Dis. §II. (A) 2)[12].   As discussed in detail above, under Rule 9(b), a Plaintiff need only plead the circumstances constituting the alleged fraud "with sufficient definiteness so as to advise the adversary of the claim which he must meet'" which has been accomplished in this case. *U.S. v. Gill*, 156 F.Supp. 955, 957 (D.C.Pa.

---

[11] It bears noting that the few cases referred to by Defendants in support of their "group pleading" argument are all cases involving securities fraud, governed by the pleading requirements of the Private Securities Litigation Reform Act (PSLRA), which are heightened above those of Rule 9(b). See *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 579 (E.D. Va. 2006); *In re Cable & Wireless*, PLC, 321 F. Supp. 2d 749 (E.D. Va. 2004). Furthermore, the "group pleading doctrine" refers to a principle that was established so that in a Securities Fraud case the statements in a group created document could be attributed to the officers and directors of the company that created the document, without specifically ascribing each particular statement to a particular defendant. *See Elliott Assocs., L.P. v. Hayes*, 141 F. Supp.2d 344, 354 (S.D.N.Y. 2000). Clearly, this body of law is inapplicable to the case at bar.

[12] The Defendants accept this position as valid and merely provide the defense that ExxonMobil Oil Corporation's appearance on the franchise agreement somehow disallows it. As throughout their motion, Defendants refuse to acknowledge that *none* of the Plaintiff's claims are based on the franchise agreement or any termination thereof. Therefore, any such argument bears no merit with regards to a motion to dismiss under 12(b)(6).

1957).   Furthermore, Plaintiff is not alone in referencing the Defendants collectively as "Exxon."   In fact, in the Tolling Agreement drafted by Exxon and its counsel, ExxonMobil Corporation and ExxonMobil Oil Corporation refer to themselves collectively as "Exxon."[13]

Further, in Plaintiff's detailed Complaint, it alleges that the fraudulent concealment of the EECO's defectiveness took place over the course of many years prior to the discharge and continuing thereafter.   While the Plaintiff overwhelmingly meets even the most rigorous reading of Rule 9(b), in such circumstances involving concealment over a long period of time, the pleading requirements of Rule 9(b) are less stringent.   Specifically, the "Courts have also relaxed the specificity requirement of Rule 9(b) when the fraud being alleged is part of a complex scheme occurring over a long period of time.   A "'relaxed rule of pleading' may be allowed as an exception in ... cases ... where 'the alleged conduct took place over a long period of time or involved numerous occurrences.'"   *U.S. ex rel. Ellis v. Sheikh*, 583 F.Supp.2d 434, 439 (W.D.N.Y. 2008)(citing *U.S. ex rel. Paul P. McDermott v. Genentech, Inc.*, 2006 WL 3741920 at 12, 2006 U.S. Dist. LEXIS 90586 at 36 (D.C.Me.2006).   This highlights the policy that the plaintiff should not be penalized any further for a defendant's prolonged and concealed fraudulent activities.   Accordingly, the Plaintiff has sufficiently provided the Defendants, ExxonMobil Corporation, and its wholly owned subsidiary, ExxonMobil Oil Corporation, with particular facts and allegations which

---

[13] The Tolling Agreement states, "This Tolling Agreement ("Agreement") is entered into this 12th day of June, 2009, by and between ExxonMobil Corporation and Exxon Mobil Oil Corporation (hereinafter collectively "ExxonMobil")...." (Tolling Agreement p. 1).   Furthermore the Tolling Agreement states, "Storto contends that it has claims against ExxonMobil, and ExxonMobil contends it has claims against Storto...." *Id.*

adequately advise them of the claims against them and allows them to form a defense and, therefore, satisfies the Federal pleading requirements.

### B.     Count III properly states a claim for Negligent Misrepresentation

In their Motion to Dismiss for failure to state a claim, the Defendants make two arguments in favor of the dismissal of the negligent misrepresentation cause of action. First, the Defendants contend, "Plaintiff's negligent misrepresentation claim is based on the allegation that Defendants represented that they would pay Plaintiff for terminating the franchise early" and this is a "promise regarding *future* conduct and cannot be the basis for a claim for negligent misrepresentation." (Mot. Dis. ¶18). <u>Nowhere</u> in the Complaint does the Plaintiff make the allegation upon which the Defendants rely, hence the Defendants' conspicuous lack of any citation to the Complaint.  Rather, the Plaintiff repeatedly pled that Defendants represented that they would pay the fair market value of the Plaintiff's business interest in the Jacksonville Exxon station in exchange for the Plaintiff's confidentiality, cooperation with the press, assistance during the initial gasoline clean-up operation, and vacation of the premises.  (Complaint ¶¶33-36, 48-49, 51, 55).

Moreover, Defendant's reliance on *Heritage Oldsmobile-Imports v. Volkswagen of America* is misguided, as that case is easily distinguishable to the case at bar and, therefore, inapplicable to Plaintiff's claim for negligent misrepresentation.  (Mot. Dis. ¶18); *Heritage*, 264 F.Supp.2d 282 (D. Md. 2003).  In *Heritage*, Volkswagen of America allegedly promised it would not appoint a new dealer in Baltimore if the current Volkswagen dealers would renovate their facilities.  The Court noted this promise was "of indefinite duration" and that

"at the end of the first year, the...[Baltimore market] would remain inactive, but performance would not be complete." *Heritage*, 264 F.Supp.2d at 290.

Conversely, in the instant case, Defendants' performance would have been complete upon payment by Defendant to Plaintiff for the value of Plaintiff's business interest. The definitiveness of duration of Defendants' contractual obligation is in direct contrast to the continuing nature of Volkswagen of America's contractual obligation in *Heritage*. The Defendants' negligent misrepresentation, therefore, was not a promise of future conduct, but rather a promise to presently enter into and perform the oral contract.

Second, the Defendants argue that Plaintiff failed to allege the requisite elements of negligent misrepresentation. Specifically, Defendants aver that Plaintiff "failed to allege that Defendants intended for Plaintiff to rely or act on the alleged negligent assertion." In paragraph 49 of the Complaint, Plaintiff alleges, "Exxon intended that Storto would rely on the promise to buy-out Storto's franchise agreement." This sentence, which is re-alleged and incorporated by reference within Count III (Negligent Misrepresentation), explicitly controverts Defendants' assertion.

Further, Defendants contend, "Plaintiff does not allege any actual and reasonable action by Plaintiff in reliance." As excerpted above in its entirety, Section II, A, paragraph 34 of the Complaint outlines the actions taken by the Plaintiff in reliance on Defendants' negligent misrepresentation. For instance, "In furtherance of the buy-out agreement, Exxon required and received Storto's cooperation in connection with the press." (Complaint ¶34). Further, "Exxon specifically asked Storto to remove all personal property from the Premises and to remain on the Premises several weeks after February 21, 2006 to

assist in granting access to the Premises.  Storto did as instructed by Exxon, all in reliance on Exxon's promise." (Complaint ¶34).  Clearly, the plain language of the Complaint belies the Defendants' assertions that Plaintiff failed to allege the requisite elements of negligent misrepresentation.  Further, the argument is emblematic of Defendants' illusory demand of magical or conclusory words, a standard contrary to that required by the Court. Fed.R.Civ.P. 8(a).

### C.    Count IV properly states a claim for Breach of Contract

As noted above, Rule 8 of the Federal Rules of Civil Procedure prescribes simplified pleading – essentially, a short and plain statement of a claim sufficient to give notice to the other party.  Fed.R.Civ.P. 8(a); *Clausen & Sons, Inc., v. Theo. Hamm Brewing Co.,* 395 F.2d 388, (8th Cir. 1968).  Specifically regarding a breach of contract claim, as the Defendants acknowledge in their Motion to Dismiss, "a party must allege that the defendant owed the plaintiff a contractual obligation and that defendant breached that obligation." *Taylor v. MationsBank,* N.A., 365 Md. 166, 175 (Md. 2001).  An express contractual obligation emanates from "an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language." *County Com'rs of Caroline County v. J. Rolan Dashiell & Sons, Inc.,* 358 Md. 83, 94 (Md. 2000)(citing *Black's law Dictionary* 323 (6th ed. 1990)).

In the instant case, this standard is amply met.  As pled in the Complaint, "Exxon made a promise that it would buyout Plaintiff's franchise in exchange for Plaintiff's confidentiality regarding the gas spill, cooperation with the clean-up efforts, and vacation of the Premises and Plaintiff agreed, thus forming a contract." (Complaint ¶55).  Further,

"Exxon provided Storto two separate statements of approved language if the press inquired about the massive gas spill at the Premises. Storto declined to speak on the record to the press and referred inquiries to a telephone number provided by Exxon." (Complaint ¶35). Finally, "Exxon specifically asked Storto to remove all personal property from the Premises and to remain on the Premises several weeks after February 21, 2006 to assist in granting access to the Premises. Storto did as instructed by Exxon, all in reliance on Exxon's promise to buy-out Storto's interest." (Complaint ¶34). Clearly, these pled facts establish the "plausible existence" of an enforceable contract in which the Defendants promised to pay the fair market value of the Plaintiff's business interest in the Jacksonville Exxon station in exchange for the Plaintiff's confidentiality, cooperation with the press, assistance during the initial gasoline clean-up operation, and vacation of the premises. (Mot. Dis. ¶19).

Moreover, the facts and circumstances pled regarding the oral contract are consistent with the subsequently executed confidentiality agreement. Though Plaintiff signed the confidentiality agreement on March 1, 2006, Plaintiff had previously agreed to maintain Defendants' confidence regarding the Jacksonville Exxon station and any and all clean-up operations following the massive gasoline spill. Indeed, the Defendants had furnished Plaintiff with two sets of talking points in furtherance of not only this previously agreed to confidentiality, but also with Plaintiff's promise to cooperate with the press regarding the gasoline spill. (Complaint ¶34). As pled in the Complaint, Plaintiff "declined to speak on the record to the press and referred inquiries to a telephone number provided by Exxon." (Complaint ¶34).

34

The confidentiality agreement does reference "Proprietary Information which may be furnished to Recipient in connection with negotiations." Again, this is consistent with the facts pled, as the Defendants promised to pay the fair market value of the Plaintiff's business interest in the Jacksonville Exxon station without specifying the exact price. According to Maryland law, the absence of a stated price "does not preclude formation of a contract. Indeed, it is common for business agreements to set 'fair market value' as the purchase price, while providing that determination of that value will be made by a third party appraiser based upon future business conditions." *Goldstein v. Miles*, 159 Md.App. 403, 462 (2004). Further, in the instant case, the Plaintiff "hired and paid for an expert to value its business and presented it to Exxon, as previously agreed. Arnold Heckman, a competent business broker, valued Storto at approximately $604,000.00." (Complaint ¶35). If Defendants disagree with the third party appraisal, any "disputes over the calculation of the sale price of business assets can be resolved by the fact-finder based on expert testimony." *Goldstein v. Miles*, 159 Md.App. 403, 462 (2004).

In sum, the facts pled in the Complaint go above and beyond the notice-pleading requirement of the Federal Rules of Civil Procedure. The Defendants, by omitting language pled in the Complaint, invent a story that has no relation to the enforceable contract in which the Defendants promised to pay the fair market value of the Plaintiff's business interest in the Jacksonville Exxon station in exchange for the Plaintiff's confidentiality, cooperation with the press, assistance during the initial gasoline clean-up operation, and vacation of the premises. Finally, any dispute as to the calculation of the value of Plaintiff's business is a question of fact, and not of law.

**D.      Count V properly states a claim for Detrimental Reliance.**

In order to state a claim for detrimental reliance, a party must allege that (1) a clear and definite promise was made; (2) the promisor had a reasonable expectation that the offer would induce action or forbearance by the promisee; (3) the promise did induce actual and reasonable action or forbearance by the promisee; and (4) the resulting detriment can only be avoided by the enforcement of the promise. *Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 166 (Md. 1996).

In the instant case, the Defendants contend Plaintiff failed to allege two of these elements. First, Defendants aver, "Plaintiff has failed to allege the existence of a clear and definite promise by Defendants." (Mot. Dis. ¶20). Specifically, Defendants portray the oral contract as "merely a promise to pay an indefinite amount of money." (Mot. Dis. ¶20). As explained above, however, according to Maryland law, the absence of a stated price does not preclude formation of a contract. *Goldstein v. Miles*, 159 Md.App. 403, 462 (2004).

Second, the Defendants once again argue that Plaintiff "does not allege any actual and reasonable action by Plaintiff in reliance." (Mot. Dis. ¶¶20-21). As repeatedly shown above, the Plaintiff maintained Defendants' confidence regarding the Jacksonville Exxon station and the clean-up operations following the massive gasoline discharge, cooperated with the press, assisted during the initial gasoline clean-up operation, and vacated the premises, "all in reliance on Exxon's promise." (Complaint ¶34). The plain language pled by the Plaintiff in the Complaint again refutes the Defendants' tired arguments.

III.   **Plaintiff may claim punitive damages for Count III**

Defendants' argue that punitive damages are not allowable for Plaintiff's claims III,

IV, and V.  Upon review of the relevant case law, Plaintiff hereby withdraws its claims for

punitive damages under claims IV and V.  However, Plaintiff's request for punitive damages

for Count III, negligent misrepresentation, is appropriate and supported by Maryland State

case law (as are Counts I and II, which Defendants have not disputed).   Defendants

incorrectly cite to *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 235, 652 A.2d 1117, 1126 (Md.

1995) for the principle that punitive damages are not available for suits based on negligent

misrepresentations.  In *Ellerin,* the Court did not even have before it the issue of whether

punitive damages for negligent representation were allowable, "This case concerns the

appropriate standard for the availability of punitive damages in a tort action of fraud or

deceit." *Id*. at 219.  Indeed, the Court in *Ellerin* acknowledged the availability of punitive

damages for non-intentional torts, "In *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 460, 601

A.2d 633, 652 (Md. 1992), the Court held that 'in a non-intentional tort action, the trier of

facts may not award punitive damages unless the plaintiff has established that the

defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, i.e.,

actual malice." *Ellerin*, 337 Md. 216 at 233.  The Court continued, "[f]urthermore, where

the torts of intentional fraud and negligent misrepresentation are distinct within a single

jurisdiction, different punitive damages standards have been applied to each." *Id* at 240.

Additionally, the Maryland Court of Special Appeals in *Exxon Corp. v. Yarema*, 69 Md.App.

124, 157-158, 516 A.2d 990, 1007 (Md. App. 1986), held that punitive damages were

recoverable in actions for negligence, nuisance and strict liability in a case involving a

gasoline release by the Defendant at the very same intersection as the instant case.  In light of the relevant case law, Plaintiff's request for punitive damages arising out of its claim for negligent misrepresentation should not be amended nor dismissed.

### CONCLUSION

Based on the arguments herein, Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule 12(b)(6), should be denied.

### REQUEST FOR HEARING

Plaintiff respectfully requests a hearing on this matter.

Respectfully submitted,

_____/s/_____
ROBERT J. WELTCHEK
KRISTOPHER A. MALLAHAN
WELTCHEK MALLAHAN & WELTCHEK
2330 West Joppa Road, Suite 203
Lutherville, Maryland 21093
410-825-5287 telephone
410-825-5277 facsimile
rweltchek@wmwlawfirm.com
kmallahan@wmwlawfirm.com
*Attorneys for the Plaintiff*