IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

STORTO ENTERPRISES, INC.,                    *

    Plaintiff,                              *

      v.                                   *          CIVIL NO.: WDQ-10-1630

EXXONMOBIL OIL CORPORATION,                  *
*et al.*,                                    *

    Defendants.                             *

  *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Storto Enterprises sued ExxonMobil Oil Corporation and ExxonMobil Corporation (collectively "Exxon") for fraud, breach of contract, and other claims. For the following reasons, Exxon's motion to dismiss will be granted in part and denied in part.

I.   Background[1]

Storto operated an Exxon branded gas station in Jacksonville, Maryland for more than 30 years. Compl. ¶ 1.[2] To detect gas leaks, Exxon installed an EECO 3000 electronic line leak detector ("LLD") at Storto's station. *Id.* ¶¶ 7-8. Storto

---

[1] In reviewing the motion to dismiss, the well-pled allegations in Storto's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

[2] Storto and Exxon entered into their most recent franchise agreement on May 25, 2004 (the "2004 Franchise Agreement"). Defs.' Mot. to Dismiss, Ex. A.

alleges that Exxon knew that EECO 3000 LLDs were defective, and that there was a "severe shortage" of parts needed to maintain them.  *Id.* ¶ 10, 18.  Exxon did not disclose this information to Storto.  *Id.* ¶ 16 & 22.

In February 2006, Storto discovered that approximately 26,000 gallons of gas had leaked from the station's underground storage tank.  *Id.*  ¶ 1, 32.  State authorities closed the station, and Exxon promised to buy-out Storto's franchise in exchange for confidentiality regarding the leak, cooperation with the cleanup efforts, and Storto's vacation of the property.  *Id.* ¶ 2, 33 & 48.

On March 1, 2006, Storto executed a confidentiality agreement and removed its property from the gas station.  *Id.* ¶ 33.  Exxon gave Storto approved press statements, which Storto followed.  *Id.* ¶ 34.  Storto hired an expert to value its business, as requested by Exxon.  *Id.* ¶ 35.  On June 13, 2006, Exxon terminated Storto's franchise. *Id.*  ¶ 36.  Exxon never provided the promised buy-out compensation.  *Id.*

After the leak, Exxon allegedly "altered the computer settings attached to the . . . station's EECO 3000", "boxed up [the equipment] and shipped it away" and "hired an alleged 'expert' . . . to write a report supporting a theory that the [LLD] was in good working order."  *Id.* ¶¶ 24-27.  Because of

Exxon's actions, Storto was "deprived of the ability to have its own experts test the equipment in issue." *Id.* ¶ 29.

Storto first learned of Exxon's knowledge of the EECO 3000 defects on May 18, 2008, when it was served with the First Amended Complaint in another case, *Alban, et al. v. ExxonMobil Corporation, et al. Id.* ¶ 30.

On May 19, 2010, Storto sued Exxon in the Circuit Court for Baltimore County for: (1) fraudulent concealment, (2) fraud, (3) negligent misrepresentation, (4) breach of contract, and (5) detrimental reliance. ECF No. 1. Exxon removed to this Court on June 18, 2010. *Id.* On June 25, 2010, Exxon filed its motion to dismiss. ECF No. 8.

## II.  Analysis

### A.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

Affirmative defenses may be raised in a Rule 12(b)(6) motion, but "for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings." *Blackstone*

3

*Realty, LLC v. FDIC,* 244 F.3d 193, 197 (1st Cir. 2001)(internal quotation marks omitted); *see also Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336-37 (4th Cir. 2009).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)(*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that

4

the pleader is entitled to relief."  *Id.* (internal quotation marks omitted).

> B.   Exxon's Motion to Dismiss

Exxon argues that all of Storto's claims should be dismissed as time-barred because: (1) they are preempted by the Petroleum Marketing Practices Act ("PMPA")[3] and its one-year statute of limitations, and, alternatively, (2) the one-year contractual limitations period set by the parties' 2004 Franchise Agreement has expired.  Exxon also argues that Count I of Storto's Complaint should be dismissed because it: (1) is barred by Maryland's general three-year limitations period, and (2) is insufficiently pled.

> 1.   PMPA Preemption

The PMPA governs the relationship between petroleum refiners and their retail franchisees.  *See Mobil Oil Corp. v. Va. Gasoline Marketers and Auto. Repair Ass'n, Inc.,* 34 F.3d 220, 223 (4th Cir. 1994).  It is intended to protect franchisees from "arbitrary or discriminatory terminations and nonrenewals," *id.* (*citing* S. Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.C.C.A.N. 873, 874), and give franchisors "adequate flexibility . . . [to] initiate changes in their marketing activities to respond to changing market conditions."  *Millet v.*

---

[3]  15 U.S.C. § 2801 *et seq.*

*Union Oil Co.,* 24 F.3d 10, 13 (9th Cir. 1994)(*quoting* S. Rep. 1978 U.S.C.C.A.N. at 877).

To achieve its goals, the PMPA sets federal standards for termination and nonrenewal of petroleum franchises and prohibits termination or nonrenewal without proper grounds and notice. *See* 15 U.S.C. § 2802.  The Act expressly preempts conflicting state laws:

> To the extent that any provision of this subchapter applies to termination . . . or to nonrenewal . . . of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation  . . . with respect to termination . . . of any such franchise or to the nonrenewal . . . of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806 (a)(1).

The PMPA also sets a one-year statute of limitations, providing that:

> no . . . action may be maintained [under the PMPA] unless commenced within 1 year after the later of—(1) the date of termination of the franchise or nonrenewal of the franchise relationship; or (2) the date the franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of this title.

15 U.S.C. § 2805 (a).

The Fourth Circuit has held that the "breadth of [the PMPA's preemption] language . . . evinces an intent by Congress to occupy the field relating to termination and non-renewal of petroleum franchises." *Jimenez v. BP Oil, Inc.,* 853 F.2d 268,

6

273 (4th Cir. 1988)(internal quotation marks omitted).  In the Fourth Circuit, the PMPA's preemptive scope extends to state laws "impact[ing] franchise termination and non-renewal." *Va. Gasoline Marketers,* 34 F.3d at 224 (PMPA preempted state law which had effect of eliminating grounds for termination that were allowable under PMPA).[4]

But, the PMPA does not regulate "every aspect of the petroleum franchise relationship." *Mac's Shell Serv. V. Shell Oil Prods. Co. LLC,* 130 S. Ct. 1251, 1259 (2010).  Instead, it "federalized only the two parts of that relationship with which it was most concerned: the circumstances in which franchisors may terminate a franchise or decline to renew a franchise relationship." *Id.*  Congress "left undisturbed state-law regulation of other types of disputes between petroleum franchisors and franchisees." *Id.*  Accordingly, "franchisees can still rely on state-law remedies to address wrongful franchisor conduct that does not have the effect of ending the franchise." *Id.* at 1260.

Storto pleads five claims against Exxon: (1) Counts II-V arise out of Exxon's failure to perform the alleged buy-out

---

[4]  This approach is broader than that adopted by other circuits, which restrict the PMPA's preemptive reach to "state laws that purport to regulate the grounds for, procedures for, and notification requirements of [franchise] terminations . . . and . . . nonrenewals." *Arbabian v. BP America,* 898 F. Supp. 703, 708 (N.D. Cal. 1995).

agreement, (2) Count I arises from Exxon's concealment of the EECO 3000 defects.  The claims arising out of the buy-out agreement are preempted; the claim arising from concealment of the defects is not.

a.   Buy-Out Agreement Claims

Counts II-V of Storto's Complaint allege claims for fraud, negligent misrepresentation, breach of contract, and detrimental reliance.  All the claims are premised on Exxon's representation that it would buy-out Storto's franchise.  Storto complains that "Exxon misrepresented their intention to buy-out [Storto's] franchise in exchange for  . . . confidentiality regarding the gas spill" and that Exxon "made a promise that it would buyout [the] franchise."  Compl. ¶¶ 48, 55.  Exxon then terminated the franchise, but did not pay as promised.  *Id.*  ¶ 38.

"[T]he PMPA preempts a state law action [that] arises out of the franchise termination or is an incident of the termination."  *Cont'l Enters. Inc., v. Am. Oil Co.,* 808 F.2d 24, 28 (8th Cir. 1986).  State-law contract and misrepresentation claims arising from attempts to contract around the Act's termination grounds or procedures are preempted because the "main contention" of these claims is wrongful termination, the guidelines for which are set by the PMPA.  *See id.*[5]  The parties

---

[5]   In *Continental Enterprises,* the court held that the PMPA preempted a breach of contract claim arising from a franchise

to the franchise agreement are presumed to be aware of the PMPA's requirements. *See Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907, 915 (6th Cir. 1986).  Thus, "a franchisor or franchisee who attempts to terminate a franchise or not renew a franchise relationship on grounds different than or in a manner different than that specified under the PMPA bears the risk of any loss associated with the failure of such termination or nonrenewal." *Arbabian,* 898 F. Supp. at 707-08.

Storto's "main contention" is that Exxon improperly terminated its franchise.  Storto alleges that Exxon stated it would buy-out the franchise, thereby terminating it, if Storto promised to keep Exxon's confidences about the gas leak.  This procedure for termination is not required by the PMPA.  *See* 15 U.S.C. §§ 2802, 2804.  If Storto's claims were outside the PMPA's one-year limitations period, Exxon "would be penalized . . . for [its] failure to follow a procedure which is different than that required by the PMPA." *Arbabian,* 898 F. Supp. at 710.

---

termination that violated an automatic renewal provision in a contract between the franchisor and franchisee.  808 F.2d at 28. The court reasoned that the allegations fell "squarely within the area covered by the PMPA" and so the PMPA's one-year limitations period applied.  *Id.  See also Arbabian,* 898 F. Supp. at 710 (fraud and negligent misrepresentation claims preempted because the "the alleged misrepresentations . . . relate[d] to the manner, or the procedure, by which the parties would end, or terminate the franchises"); *Huth v. BP Oil, Inc.,* 555 F. Supp. 191, 193-94 (D. Md. 1983) (PMPA preempted Maryland breach of contract claim arising from termination of franchise in violation of parties' contractual agreement requiring advance notice).

Storto's fraud, negligent misrepresentation, breach of contract, and detrimental reliance claims arising out of the alleged buy-out agreement are preempted by the PMPA.  The PMPA's one-year statute of limitations has run on any wrongful termination claims Storto may have had against Exxon.[6]  Counts II-V will be dismissed.

> b.   EECO 3000 Fraudulent Concealment Claim

Count I pleads a fraudulent concealment claim premised on Exxon's failure to disclose the EECO 3000 defects.  Compl. ¶¶ 39-46.  Storto alleges that "Exxon deliberately failed to disclose [the defects]," causing the gas leak and harming Storto's "property and economic interests." *Id.* ¶¶ 42-45.

If Maryland law required Exxon to disclose such defects, it did not impose a conflicting standard or procedure for terminating a petroleum franchise, and such a requirement would not have affected franchise termination or non-renewal.  *Cf. J.H.W. Sr., Inc. v. Exxon Co., U.S.A.,* 921 F. Supp. 1436, 1440-41 (D. Md. 1996) (breach of contract claim based on franchisor's artificial inflation of rent did not involve termination or non-renewal and was not preempted). Count I is not preempted by the PMPA, nor barred by its one-year statute of limitations.

---

[6]   The Complaint alleges that Exxon terminated Storto's franchise on June 13, 2006.  Compl. ¶ 11.  Storto did not sue Exxon until May 19, 2010.  ECF No. 2.

2.   Contractual Limitations Period

The parties' 2004 Franchise Agreement includes a one-year contractual limitations period:

> All claims by [Storto] whether or not arising out of this agreement are barred unless asserted by the commencement of a lawsuit naming ExxonMobil as a defendant in a court of competent jurisdiction within 12 months after the event, act, or omission, to which the claim relates.

Defs.' Mot. to Dismiss, Ex. A at ¶ 20.6.[7]

Exxon argues that Storto's claims are time-barred by this provision.  Defs.' Mot. to Dismiss 13.  Storto argues that the contractual limitations period is unreasonable and invalid because: (1) it sets an accrual and limitation date, and (2) it limits all claims brought by Storto, but places no restrictions on Exxon's claims.  Pl.'s Opp'n 21-22.

Maryland recognizes a "strong public policy in favor of freedom to contract" and the "ability of parties to agree to a shorter period of limitations." *Coll. of Notre Dame v. Morabito Consultants, Inc.,* 132 Md. App. 158, 178 (Md. Ct. Spec. App. 2000).[8]  A reasonable contractual limitations period will be

---

[7]  This Court may consider the 2004 Franchise Agreement, attached to Exxon's motion to dismiss, because it is integral to the Complaint and Storto does not contest its authenticity. *See Sec. of State for Defence v. Trimble Navigation, Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

[8]  When sitting in diversity, a federal court follows the choice-of-law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 497 (1941).  Thus, Maryland choice-of-law

enforced.  *Id.* at 174.  Courts have frequently found one-year contractual limitations periods reasonable,[9] and the provision here is not unreasonable because it sets accrual and limitation dates.[10]

Maryland courts have not addressed the enforceability of a contractual limitations period binding only one party.  The Maryland Court of Appeals has considered the enforceability of a one-sided arbitration agreement. *Walther v. Sovereign Bank,* 386 Md. 412, 431-32 (2005).  The provision in *Walther* required the mortgagor to submit all claims to arbitration, but allowed the mortgagee to pursue foreclosure actions judicially.  *Id.*  The court held that the agreement was enforceable because "the arbitration clause at issue [was] not illusory" as it "bound

---

rules govern. *Id.*  Maryland courts follow the rule of *lex loci contractus,* applying the substantive law where the contract was formed.  *Allstate Ins. Co. v. Hart,* 327 Md. 526, 529 (1992). The parties appear to agree that the 2004 Franchise Agreement was made in Maryland, and Maryland law governs its interpretation.

[9] *See In re Cotton Yarn Antitrust Litig.,* 505 F.3d 274, 287 (4th Cir. 2007)(collecting cases).

[10] *See Coll. of Notre Dame,* 132 Md. App. at 177-78(contractual limitations period setting accrual date for all actions was enforceable in light of Maryland's strong public policy in favor of freedom to contract); *Harbor Court Assocs. v. Leo A. Daly Co.,* 179 F.3d 147, 149-51 (4th Cir. 1999)(construction contract setting accrual date at substantial completion of the work was enforceable under Maryland law and precluded application of the discovery rule because "the courts of Maryland [have] established [their] commitment to the enforcement of individual contractual choices").

[the mortgagee] to arbitrate certain disputes . . . instead of pursuing them in a judicial forum." *Id.* at 433, 436.  Because an arbitrator could not order foreclosure, the one-sided agreement preserved the foreclosure action "of necessity." *Id.* (citing *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 179-81 (3d Cir. 1999)).  The court noted several decisions by other courts enforcing similar agreements when there was a "valid justification" for the one-sided term.  *Id.* at 434.

*Walther* suggests that a one-sided limitations period would be enforceable under Maryland law if supported by a "valid justification."  *Id.*  This is consistent with the reasoning of other courts.[11]  *See, e.g., Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 1001 (9th Cir. 2010) (when "no special circumstance necessitates a non-mutual provision, a unilateral reduction in the statute of limitations is an indicator of substantive unconscionability.").

No justification for the lack of mutuality is given in the Complaint or Franchise Agreement.  Thus, the facts establishing

---

[11]  When a state's highest court has not spoken directly on an issue, a federal court sitting in diversity "may draw upon a variety of sources that may reasonably be thought to influence the state court's decisional calculus [including] analogous decision of the state's highest court . . . decisions of the lower courts of that state . . . precedents in other jurisdictions . . . [and] the collected wisdom found in learned treatises." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.,* 547 F.3d 48, 51-52 (1st Cir. 2008).

13

the enforceability of the contractual limitations period against Storto are not "clear on the face of the . . . pleadings" and dismissal of Storto's fraudulent concealment claim because of that limitations period would be inappropriate. *See U.S. Home Corp. v. Settlers Crossing, LLC,* 2010 WL 958034, at \*6 (D. Md. Mar. 11, 2010)(Rule 12 (b)(6) dismissal "may be appropriate when a meritorious affirmative defense is clear from the face of the complaint.").[12]

### 3.   Maryland Statute of Limitations

Exxon next argues that Storto's fraudulent concealment claim is barred by Maryland's three-year statute of limitations. Defs.' Reply 3.  Exxon contends that Storto had sufficient notice of its claim upon discovery of the gas leak in February 2006, more than four years before Storto sued.  *Id.*

---

[12]   Storto also argues that the contractual limitations period is invalid because it: (1) violates section 2805 of the PMPA, and (2) is the product of Exxon's fraud.  The limitations period does not violate section 2805 of the PMPA.  That provision prohibits franchisors from *requiring* that franchisees waive "any right that [they] may have under any valid . . . State law" before entering into the franchise relationship.  15 U.S.C § 2805 (f).  It does not prohibit franchisees from *voluntarily* contracting to waive a state statute of limitations.  *See Bajwa v. Sunoco, Inc.,* 320 F. Supp. 2d 454, 464-65 (E.D. Va. 2004) (franchisee may "contract[] away" state rights). Storto also fails to allege that the limitations period is invalid as a product of fraud because Storto does not state that it "relied on [Exxon's] misrepresentation" in agreeing to the limitations period.  *See Barrie Sch. v. Patch,* 401 Md. 497, 517 (2007).

Storto's fraudulent concealment claim is subject to Maryland's general three-year statute of limitations, which states "a civil action shall be filed within three years from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-101; *Shepherd v. Fremont Inv. & Loan,* 2010 WL 2651622, at *2 (D. Md. June 30, 2010). Maryland courts generally apply the discovery rule to determine when a cause of action accrued. *Martin Marietta Corp. v. Gould, Inc.,* 70 F.3d 768, 771 (4th Cir. 1995).

Under the discovery rule, "a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Id.* The plaintiff "must have some notice of the fraud." *U.S. Home Corp.,* 2010 WL 958034 at *6. But, even if a plaintiff has some reason to suspect he may have a claim, Maryland courts have been unwilling to hold as a matter of law that the cause of action accrued "when [the] plaintiff has relied on the defendant's or some other skilled person's assurances that there was no problem." *Pilz v. FDIC,* 117 F.3d 1414, 1414 (4th Cir. 1997).

Storto has alleged that Exxon prevented it from examining the LLD after it discovered the leak, and that Exxon's expert reported that improper calibration—not an equipment defect—caused the leak. Compl. ¶ 8 & 27. Storto relied on Exxon's expert. *Id.* It is not clear that, at the time of leak, Storto had sufficient knowledge of its potential claim against Exxon to

15

trigger the statute of limitations.  *See DeGroft v. Lancaster Silo Co.,* 527 A.2d 1316, 1324-26 (Md. Ct. Spec. App. 1986) (declining to hold as a matter of law that owner's knowledge that building was dangerously leaning was sufficient to start statute of limitations when owner relied on builder-defendant's assurances that the building was sound).

Count I will not be dismissed as untimely under Maryland's general three-year limitations period.

### 4.  Insufficient Pleadings

Exxon argues that if not time barred, Storto's fraudulent concealment claim should be dismissed because Storto has failed to plead the fraud with sufficient particularity.  Defs.' Mot. to Dismiss 14.  Under Fed. R. Civ. P. (9)(b), a party alleging fraud "must state with particularity the circumstances constituting [the] fraud."[13]  To satisfy the Rule, Storto must "identify with some precision the date, place, and time of active misrepresentations or the circumstances of active concealments, specifying which Defendant or Defendants is supposedly responsible for those statements or omissions." *Johnson v. Wheeler,* 492 F. Supp. 2d 492, 509 (D. Md. 2007).

Storto is not required to "elucidat[e] . . . every detail of the alleged fraud," but it must do more than merely assert

---

[13]  Rule 9(b) applies to fraudulent concealment claims.  *See Hill v. Brush Engineered Materials, Inc.,* 383 F. Supp. 2d 814, 822-23 (D. Md. 2005).

that such a cause of action exists.  *Kerby v. Mortg. Funding Corp.,* 992 F. Supp. 787, 799 (D. Md. 1998).   Rule 9(b)'s heightened pleading requirement protects defendants from frivolous suits and harm to their goodwill, and eliminates fraud actions in which all facts are learned after discovery. *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).  A court "should hesitate to dismiss a complaint under Rule (9)(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts."  *Id.*

Storto has sufficiently alleged the circumstances of Exxon's omissions.  The Complaint states that since 1998, Exxon has known that EECO 3000 LLDs were "unreliable, unsafe, . . . defective," and not in compliance with federal and state laws. Compl. ¶ 11.  Exxon "left the defective EECO system in place at [Storto's] station despite knowing [of its defects] for at least five years prior [to the leak]."  *Id.* ¶ 22.  Exxon "failed to disclose [the defects] because if it [did], Exxon would have been exposed to government fines, private litigation, and public outcry."  *Id.* ¶ 42.

Generally, "[w]hen a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff

17

identify each defendant's participation in the alleged fraud." *Haley v. Corcoran,* 659 F. Supp. 2d 714, 721 (D. Md. 2009). However, "[o]n rare occasions, a plaintiff can make collective allegations against several defendants, who are then expected to determine their individual involvement." *United States v. Alaskan Pipeline Co.,* 1997 WL 33763820, at *4 (D.D.C. Mar. 27, 1997). A plaintiff need not particularize its pleadings to each defendant when the defendants are related corporations who "can most likely sort out their involvement without significant difficulty." *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1329 (7th Cir. 1994).

The 2004 Franchise Agreement states it is between Storto and "ExxonMobil Oil Corporation." Defs.' Mot. to Dismiss, Ex. A at 5. Defendant ExxonMobil Oil Corporation is a "wholly owned subsidiary of Defendant ExxonMobil Corporation." Compl. ¶ 4. The Defendants are represented by the same counsel. *See Sussex Fin. Enters., Inc. v. Bayerische Hypo-Und Vereinsbank,* 2010 WL 94272, at *3 (N.D. Cal. Jan. 6, 2010)(Rule 9(b) not violated by "lumping" together a parent corporation and two subsidiaries when "each [were] represented by the same counsel.").

The Complaint gives the Defendants sufficient notice of the particulars they will have to defend against at trial, and they can sort out their individual involvement without great difficulty. *Harrison,* 176 F.3d at 784; *Jepson,* 34 F.3d at 1329.

18

Rule 9(b) has been satisfied.  Exxon's motion to dismiss will be denied as to Count I.[14]

III. Conclusion

For the reasons stated above, Exxon's motion to dismiss will be granted in part and denied in part.

January 21, 2011                           _____/s/_____
Date                                       William D. Quarles, Jr.
                                           United States District Judge

---

[14]  Exxon also argues that Count I should be dismissed because Storto has failed to allege that the fraud was material.  Defs.' Mot. to Dismiss 14.  A fact is material when "its existence or nonexistence is a matter to which a reasonable man would attach importance in determining his choice of action...."  *Brodsky v. Hill,* 196 Md. 509, 515-16 (1950).  Storto has alleged that the EECO 3000 LLDs, which Exxon referred to as "critical safety devices," were incapable of detecting leaks as required by federal and Maryland law and had "a false alarm rate of virtually 100% and a detection rate of virtually 0%."  Compl. ¶¶ 11, 13-15.  "[A] reasonable [person] would attach importance" to these facts; Storto has sufficiently alleged the materiality of Exxon's omissions.  *Brodsky,* 196 Md. at 515.