UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STORTO ENTERPRISES, INC.**<br>**Plaintiff**<br><br>v.<br><br>**EXXONMOBIL OIL CORPORATION, et al.**<br>**Defendants** | Case No. 1:10-cv-01630-WDQ |

## ANSWER

Defendants ExxonMobil Oil Corporation ("ExxonMobil Oil") and Exxon Mobil Corporation ("Exxon Mobil Corp.") (collectively, "Defendants"), by and through their undersigned counsel, hereby submit their Answer to the Complaint and Demand for Jury Trial (the "Complaint") filed by Plaintiff Storto Enterprises, Inc. ("Storto" or "Plaintiff").

1.  Defendant Exxon Mobil Corp. admits that it owns the property located at 14258 Jarrettsville Pike, Phoenix, Maryland, formerly the site of the Jacksonville Exxon Service Station, Store No. 2-8077 (the "Jacksonville Station"). Defendants admit that the Jacksonville Station's daily inventory records maintained by Plaintiff for January and February 2006 indicate a loss of more than 25,000 gallons of gasoline product between January 13, 2006 and February 16, 2006. Defendants admit that Plaintiff operated the Jacksonville Station until February 16, 2006. Defendants deny the remaining allegations in Paragraph 1.

2.  Defendants admit that Exxon Mobil Oil entered into a Confidentiality Agreement with Plaintiff on March 1, 2006 (the "Confidentiality Agreement"). Defendants state that the Confidentiality Agreement speaks for itself and deny any attempt by Plaintiff to characterize or paraphrase that document. Defendants admit further that Plaintiff removed personal property

from the Jacksonville Station on or about March 1, 2006 and that, by letter dated June 13, 2006, ExxonMobil Oil provided Storto with three-months notice of termination of the Franchise Agreement in accordance with the PMPA. Certain of Plaintiff's allegations in Paragraph 2 state legal conclusions to which a response is not required. To the extent a response is deemed necessary, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 2.

  3.  Admitted.

  4.  Defendants admit that ExxonMobil Oil is a corporation formed under the laws of the State of New York. Defendants admit that ExxonMobil Oil is a wholly owned subsidiary of Exxon Mobil Corp., the world's largest publicly traded integrated petroleum and natural gas company. Defendants admit that they are engaged in the international refining and marketing of motor fuel and petroleum products under the "Exxon" and "Mobil" brands. Defendants admit that, in Maryland, ExxonMobil Oil markets motor fuel under its "Exxon" trademark in part through a franchise distribution system whereby ExxonMobil Oil leases retail motor fuel outlets to independent "Exxon" franchisees that are authorized to operate locations under the "Exxon" brand. Defendants admit that the franchisees purchase "Exxon" branded motor fuel from ExxonMobil Oil for resale to the motoring public under the "Exxon" trademark. Defendants admit that ExxonMobil Oil entered into a PMPA Franchise Agreement with Plaintiff in 2004. Defendants admit that the Jacksonville Station was an Exxon branded motor fuel location. Defendants deny the remaining allegations contained in Paragraph 4.

  5.  The allegations in Paragraph 5 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations.

6. The allegations in Paragraph 6 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations.

7. Certain of Plaintiff's allegations in Paragraph 7 state legal conclusions to which a response is not required. To the extent a response is deemed necessary, Defendants deny those allegations. Defendants admit the remaining allegations in Paragraph 7.

8. Defendants admit that when the electronic line leak detector at the Jacksonville Station sounded an alarm, the pumps were shut down such that Plaintiff could not sell gasoline. Defendants deny the remaining allegations in Paragraph 8.

9. Defendants admit that EECO 3000 line leak detectors were utilized at certain Exxon-branded gasoline stations throughout the United States beginning in the late 1990's. Defendants deny the remaining allegations in Paragraph 9.

10. Certain of the allegations in Paragraph 10 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny such allegations. Defendants further deny the remaining allegations in Paragraph 10.

11. Certain of the allegations in Paragraph 11 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny such allegations. Defendants further deny the remaining allegations in Paragraph 11.

12. Certain of the allegations in Paragraph 12 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny such allegations. Defendants admit that EECO 3000 line leak detectors were utilized at certain Exxon-branded gasoline stations throughout the United States beginning in the late 1990's. Defendants deny the remaining allegations in Paragraph 12.

13. Certain of the allegations in Paragraph 13 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny such allegations. Defendants further deny the remaining allegations in Paragraph 13.

14. Defendants admit that the EECO 3000 line leak detector was utilized at the Jacksonville Station at the time of the leak and at other Exxon-branded stations in the U.S. Defendants admit that ExxonMobil Oil installed Veeder Root TLS-350 line leak detectors at certain Exxon-branded stations beginning in 2001. Defendants deny the remaining allegations in Paragraph 14.

15. Admitted.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Certain of the allegations in Paragraph 21 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny such allegations. Defendants further deny the remaining allegations in Paragraph 21.

22. Denied.

23. Denied.

24. Denied.

25. Defendants admit that line leak detection equipment was removed from the Jacksonville Station as part of remediation efforts following the leak. Defendants deny the remaining allegations in Paragraph 25.

26. Defendants admit that line leak detection equipment was removed from the Jacksonville Station as part of remediation efforts following the leak and delivered to OPW. Defendants deny the remaining allegations in Paragraph 26.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Defendants admit the allegations in Paragraph 31 as to ExxonMobil Oil but deny the allegations as to Exxon Mobil Corp.

32. Defendants admit the allegations in Paragraph 32 as to ExxonMobil Oil but deny the allegations as to Exxon Mobil Corp.

33. Defendants admit that ExxonMobil Oil entered into a Confidentiality Agreement with Plaintiff on or about March 1, 2006. Defendants state that the Confidentiality Agreement speaks for itself and deny any attempt by Plaintiff to characterize or paraphrase that document. Defendants deny the remaining allegations in Paragraph 33.

34. Certain of the allegations in Paragraph 34 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny such allegations. Defendants admit that ExxonMobil Oil provided Plaintiff with language for press responses and that Plaintiff referred certain inquiries to ExxonMobil Oil. Defendants admit that Plaintiff removed personal property from the Jacksonville Station on or about March 1, 2006 and remained on site for a period of time thereafter. Defendants deny the remaining allegations in Paragraph 34.

35. Certain of the allegations in Paragraph 35 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny such allegations. Defendants are without knowledge or information sufficient to form a belief as to Plaintiff's hiring and paying for an alleged expert to value its business and, therefore, deny those allegations. Defendants admit that ExxonMobil Oil paid Plaintiff for certain expenses. Defendants deny the remaining allegations in Paragraph 35.

36. The allegations of Paragraph 36 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations in Paragraph 36.

37. Denied.

38. Defendants admit that by letter dated June 13, 2006, ExxonMobil Oil provided Storto with three-months notice of termination of the Franchise Agreement in accordance with the PMPA. Defendants deny the remaining allegations of Paragraph 38.

39. Defendants incorporate by reference their responses to Paragraphs 1 through 38 as though fully set forth herein.

40. The allegations in Paragraph 40 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations.

41. Denied.

42. Denied.

43. The allegations in Paragraph 43 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations.

44. The allegations in Paragraph 44 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations.

45. The allegations in Paragraph 45 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations.

46. The allegations in Paragraph 46 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations.

47. Pursuant to the Court's Order dated January 21, 2011, Counts II through V of Plaintiff's Complaint have been dismissed with prejudice and no response to the allegations contained in Paragraphs 47 through 63 thus are required.

### AFFIRMATIVE DEFENSES

**First Affirmative Defense**

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**Second Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

**Third Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

**Fourth Affirmative Defense**

Plaintiff's claims are barred by the applicable statute of limitations.

**Fifth Affirmative Defense**

Plaintiff's claims are barred by the applicable contractual limitations.

**Sixth Affirmative Defense**

Plaintiff's claims are barred because requiring Defendants to pay Plaintiff for alleged damages would unjustly enrich Plaintiff.

**Seventh Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by the clean hands doctrine.

### Eighth Affirmative Defense

Plaintiff is not entitled to recover attorney's fees or costs in this action as a matter of law.

### Ninth Affirmative Defense

Plaintiff's damages claims are barred by failure to mitigate damages.

### Tenth Affirmative Defense

Defendants reserve the right to amend these affirmative defenses based upon the information obtained in discovery.

### Eleventh Affirmative Defense

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and the Due Process Clause of Maryland's Constitution (Article 24), because due process requires that any award of punitive damages bear a close relationship to appropriate civil fines or penalties established by the legislature, or by administrative agencies under authority delegated by the legislature. The law of this State, however, fails to incorporate this due process requirement, and therefore no award of punitive damages may be constitutionally made under the law of this State.

### Twelfth Affirmative Defense

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and the Due Process Clause of Maryland (Article 24), because punitive damages, as awarded in this State, impermissibly discriminate against corporate defendants, including the defendants in this case, that are organized under the laws of other states and that maintain their principal places of business in other states.

### Thirteenth Affirmative Defense

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1), the Commerce Clause of the United States Constitution (Article I, § 8, cl. 3), and by principles of federalism embodied in the Constitution, to the extent that any claim is based on any conduct by Defendants that occurred outside this State. No *legitimate* interest of this State can be served by the imposition of punitive damages based on conduct that occurred outside this State; therefore, the limitations on state power in the Due Process and Commerce Clauses prohibit any award of punitive damages based on such conduct.

**Fourteenth Affirmative Defense**

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Maryland (Article 26), because the Defendants' conduct that is alleged to warrant punitive damages is unrelated to the plaintiff's harm. Punitive damages may not be awarded to punish and deter conduct that bears no relation to the plaintiff's harm.

**Fifteenth Affirmative Defense**

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Maryland (Article 26), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to each of the five reprehensibility factors set out in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the *de novo* review

of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

### Sixteenth Affirmative Defense

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Maryland (Article 26), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the constitutional factors that govern the permissible ratio of punitive damages to compensatory damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003) (holding that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the *de novo* review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

### Seventeenth Affirmative Defense

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Maryland (Article 26), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the comparable civil fine that could be imposed on the defendants for the conduct in question. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 428 123 S. Ct. 1513, 1531 (2003) (holding

that civil fines are more appropriate benchmarks for punitive damages than criminal penalties); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583, 116 S. Ct. 1589, 1603 (1996) (holding that courts "should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue."); (O'Connor, J., concurring in part and dissenting in part) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301, 109 S. Ct. 2909, 2934 (1989)); *Clark v. Chrysler Corp.*, 436 F. 3d 594, 607 (6th Cir. 2006) (rejecting potential for punitive damages award as a basis for comparison in favor of potential civil penalties under applicable federal statute). Such specific jury instructions and specific findings of fact on the comparable civil penalties are necessary for purposes of Due Process in order to permit the *de novo* review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

**Eighteenth Affirmative Defense**

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Maryland (Article 26), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the direct relationship between the defendants' conduct and the specific injury suffered by plaintiff. *Phillip Morris USA v. Williams*, 549 U.S. 346, 355, 127 S. Ct. 1057, 1064 (2007) (holding that "the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, *i.e.*, seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423, 123 S. Ct. 1513, 1523 (2003) (holding that "[D]ue process does not permit courts, in the calculation of punitive

damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the reprehensibility analysis."). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the *de novo* review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001), to ensure that the award is based solely on the conduct that caused specific injury to the plaintiff[s].

### Nineteenth Affirmative Defense

Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Maryland (Article 26), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the exclusion of all items of compensatory damage from the quantum of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426, 123 S. Ct. 1513, 1525 (2003) (noting that "[t]he compensatory damages for the injury suffered here . . . likely were based on a component that was duplicated in the punitive award"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the *de novo* review required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), to ensure that items of compensatory damages are not impermissibly 'double-counted' in the quantum of punitive damages.

Dated: February 7, 2011

Respectfully submitted,

/s/ John E. Griffith, Jr.
John E. Griffith, Jr., Esq. (Bar No. 00168)
Michelle J. Dickinson, Esq. (Bar No. 25613)
William O. Mandycz, Esq. (Bar No. 28550)
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland  21209
Tel:   (410) 580-3000

James Sanders, Esquire
Thomas H. Dundon, Esquire
NEAL AND HARWELL, PLC
150 Fourth Avenue, North
Suite 2000
Nashville, TN  37219
Tel:   (615) 244-1713

*Attorneys for Defendants*
*ExxonMobil Oil Corporation and*
*Exxon Mobil Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of February, 2011, a copy of Defendants' Answer to Plaintiff's Complaint was filed with the Clerk of this Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Robert J. Weltchek
Kristopher A. Mallahan
Nolan J. Weltchek
WELTCHEK MALLAHAN & WELTCHEK
2330 West Joppa Road, Suite 203
Lutherville, Maryland 21093

*Attorneys for Plaintiff*
*Storto Enterprises, Inc.*

William O. Mandycz