IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                          |   |                          |
|--------------------------|---|--------------------------|
| STORTO ENTERPRISES, INC., | * |                          |
|                          | * |                          |
| Plaintiff,               | * |                          |
|                          | * |                          |
| v.                       | * | CIVIL NO.: WDQ-10-1630   |
|                          | * |                          |
| EXXONMOBIL OIL CORPORATION, | * |                        |
| et al.,                  | * |                          |
|                          | * |                          |
| Defendants.              | * |                          |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Storto Enterprises, Inc. ("Storto") sued Exxonmobil Oil Corporation and ExxonMobil Corporation (collectively, "Exxon") for fraudulent concealment and other claims. For the following reasons, Exxon's motion for summary judgment will be granted.

I.  Background[1]

Storto operates an Exxon gas station in Phoenix, Maryland ("the station"). ECF No. 2 ¶1. Exxon installed an EECO 3000 electronic line leak detector ("LLD") at the Storto station sometime before 2006. ECF No. 2 ¶14. The EECO "went down all the time," and Storto frequently called on Exxon to repair it. ECF No. 30 Attach. 7 at 197:7-11 (deposition of Andrea Loiero, 2/15/2008).

---

[1] In reviewing a motion for summary judgment, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On January 16, 2006, Andrea Loiero, a corporate represent-
ative and officer of Storto, noticed during an inventory check
that 429 gallons of gas was missing from one of the gas tanks.[2]
ECF No. 30 Attach. 7 at 63:11-14, 84:9-13.

On February 17, 2006, Storto discovered that approximately
26,000 gallons of gas had leaked from the station's underground
storage tank since January 16, 2006.  ECF No. 32 Attach. 2 at
46:4-5, 23-25.  On the same day, Loiero learned that Exxon had
included the station on a list of gas stations that would
replace the EECO with a new, more reliable LLD (the "Veeder-
Root").  ECF No. 30 Attach. 7 at 197:7-20.

On May 22, 2006, Storto and Exxon were served with a
complaint based on the leak.  ECF No. 33 Attach. 8.  Jeff and
Marsha Alban had sued Storto and Exxon for fraud and other
claims.  *Id*. ¶¶59-67.  They alleged that before January 16,
2006, Storto and Exxon knew of and fraudulently concealed

---

[2] Storto's inventory reconciliation calculator reported gas level
discrepancies on a daily and monthly basis.  ECF No. 30 Attach.
7 at 84:9-14, 87:2-14.  Between January 16 and February 17,
Loiero mistakenly read the daily variation calculations as the
total monthly variations (between what the inventory should have
been and what it actually was), and "just didn't" scroll to the
part of the report that provided the correct monthly totals.
*Id*. 86:21-87:14, 241:1-19.  In late January, she printed the
inventory reconciliation report so that she could determine the
cause of the lost inventory, but did not notice the monthly
total, which "had to have" been on the printout.  *Id*. 89:5-
90:13.

problems with preventing and identifying gas leaks.  ECF No. 33
Attach. 9 ¶¶61, 62.[3]

On June 12, 2009, Storto and Exxon entered a "tolling
agreement" in which they agreed that "any applicable statute of
limitations shall be tolled and suspended . . . for a period of
one year from [June 12, 2009]."  Claims that were time-barred
before June 12, 2009 would remain barred.  ECF No. 32 Attach. 21
¶1.

On May 19, 2010, Storto filed a five-count complaint
against Exxon in the Circuit Court for Baltimore City.  ECF No.
1 at 1.  On May 27, 2010, Storto served the complaint on Exxon.
ECF No. 1 at 1.  On June 18, 2010, Exxon removed to this Court.
ECF No. 1 at 1.

On January 24, 2011, the Court dismissed all but Storto's
fraudulent concealment claim.  ECF No. 14.  On August 22, 2011,

---

[3] The complaint alleged that:

> [Exxon and Storto] neither alerted MDE nor area
> residents . . . of deficiencies of which they were
> aware in their monitoring and operation of underground
> storage tank and piping systems . . . .
>     Plaintiffs relied to their detriment on the
> reasonable assumption that, because [Exxon and Storto]
> did not disclose any problems or concerns pertinent to
> the condition of their underground storage tank
> system, there was no reason to be concerned that a gas
> leak . . . was likely to occur.  Similarly, Plaintiffs
> . . . relied to their detriment on the reasonable
> assumption that, because [Exxon and Storto] failed to
> disclose . . . [the] leak, no such leak existed.

ECF No. 33 Attach. 9 ¶¶61, 62.

Exxon moved for summary judgment.  ECF No. 30.  On September 9, 2011, Storto opposed the motion.  ECF No. 32.  On September 26, 2011, Exxon filed its reply.  ECF No. 33.

II.  Analysis

A.  Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[4]  In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually

---

[4] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment."  Fed. R. Civ. P. 56 advisory committee's note.

unsupported claims and defenses from proceeding to trial,"
*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526
(4th Cir. 2003) (citation and internal quotation marks omitted).

   B.   Storto's Fraudulent Concealment Action is Barred by
        the Statute of Limitations

   Maryland's general statute of limitations is three years.
Md. Code. Ann., Cts. & Jud. Proc. § 5-101.[5]   Exxon contends that
Storto's fraudulent concealment claim is barred by the statute.
ECF No. 30 Attach. 1 at 16.   Storto agrees that the limitations
period is three years, but contends it did not begin to run
until February 15, 2008, when Loiero learned that Exxon had been
knowingly concealing "the systemic defectiveness of the EECO
3000."   ECF No. 32 Attach. 1 at 9.

   The limitations period begins to run when the cause of
action accrues; that is, when the plaintiff knew or reasonably
should have known of the wrong.   *Am. Gen. Assur. Co. v. Pappano*,
374 Md. 339, 351, 822 A.2d 1212, 1219 (2003).   A party need not
know "all the details of his cause of action for that cause of
action to accrue; it is enough that he have actual knowledge of
facts sufficient to put an ordinarily prudent person on
inquiry."   *DeGroft v. Lancaster Silo Co.*, 527 A.2d 1316, 1324
(Md. Ct. Spec. App. 1987).   Knowledge will be imputed to the
plaintiff when it is aware "of circumstances which would cause a

---

[5] The parties agree that Maryland law applies, and this Court has
previously applied Maryland law.   ECF No. 13 at 11 n.8.

reasonable person in [its] position . . . to undertake an

investigation which, if pursued with reasonable diligence, would

have led to knowledge of the alleged [wrong]." *Pappano*, 374 Md.

at 351, 822 A.2d at 1219 (internal quotation marks and citations

omitted).

There is no genuine dispute that by May 22, 2006, Storto

knew that: (1) the station's EECO required frequent repairs;[6] (2)

Exxon was planning to replace Storto's and other stations' EECOs

with a newer, more reliable LLD, the Veeder-Root;[7] (3) the EECO

"wasn't working" during January and February 2006;[8] and (4) Exxon

had been accused of fraudulently concealing that it knew gas

leaks were likely and had problems preventing and identifying

the leaks in underground storage tanks.[9]

The history of problems with their own EECO and the

allegations that before January, 2006, Exxon knew that leaks

were *likely* because of similar leak prevention and identifi-

cation problems are "circumstances which would cause a reason-

able person in [Storto's] position . . . to undertake an invest-

---

[6] ECF No. 30 Attach. 7 at 197:7-11 (Loiero deposition, stating
that the EECO had constant problems before the leak).

[7] ECF No. 30 Attach. 7 at 197:7-20 (Loiero deposition, stating
that on February 17, 2006, she learned Storto was on the list
for replacement).

[8] ECF No. 32 Attach. 1 at 11 (*citing* ECF No. 32 Attach. 2 at 49).

[9] ECF No. 33 Attach. 9 ¶¶16, 62.

igation which, if pursued with reasonable diligence, would have led to knowledge of the" alleged fraudulent concealment. *See Pappano*, 374 Md. at 351, 822 A.2d at 1219 (internal quotation marks and citations omitted).[10]

Storto contends that it had no notice of the precise fraud--concealing the problems with the EECO, until "the [*Alban*]

---

[10] When the Court considered Exxon's motion to dismiss for failure to state a claim, it noted:

Storto has alleged that Exxon prevented it from examining the LLD after it discovered the leak, and that Exxon's expert reported that improper calibration—not an equipment defect— caused the leak. Compl. ¶ 8 & 27. Storto relied on Exxon's expert. *Id.* It is not clear that, at the time of leak, Storto had sufficient knowledge of its potential claim against Exxon to trigger the statute of limitations. *See DeGroft v. Lancaster Silo Co.,* 527 A.2d 1316, 1324-26 (Md. Ct. Spec. App. 1986) (declining to hold as a matter of law that owner's knowledge that building was dangerously leaning was sufficient to start statute of limitations when owner relied on builder-defendant's assurances that the building was sound).

ECF No. 13 at 15-16. Storto no longer relies on those arguments. Storto now suggests that examining the EECO would not have revealed Exxon's failure to disclose "the systemic defectiveness of the EECO 3000 line leak detection equipment." ECF No. 32 Attach. 1 at 10 (calling the possibility of discovering Exxon's fraud by examining the EECO "tenuous"). Storto had notice that Exxon might have been aware of line leak defects on May 22, 2006, when it was served with the *Alban* complaint. ECF No. 33 Attach. 8. Further, Storto argues that on February 17, 2006, "[b]ased on [Exxon's] representation, [Storto] reasonably and logically concluded that the EECO 3000 at the [Storto] station wasn't working." ECF No. 32 Attach. 1 at 11. Accordingly, Storto concedes that it learned the EECO was defective on the day it discovered the leak, but maintains that knowing about the defect did not put them on inquiry notice of the alleged fraudulent concealment. *See id.* ("[Exxon] gave no indication to [Storto] that [they] knew EECO 3000s nationwide suffered from frequent breakdowns.").

plaintiffs' lawyers, with all the powers of discovery at their disposal, examined thousands upon thousands of internal documents provided by Exxon, to which [Storto] would never have had access." ECF No. 32 Attach. 1 at 9. Though Storto may not have known exactly what Exxon allegedly concealed, it was on inquiry notice that Exxon might be concealing *something* involving the leak, as alleged in the *Alban* complaint.

The *Alban* plaintiffs did not know exactly what Exxon was concealing when they filed their complaint, but they "pursued [the information they had] with reasonable diligence"[11] by sufficiently pleading a fraud claim, which enabled them to discover more specific information and amend their complaint to allege concealment of the EECO problems. *See* ECF No. 32 Attach. 1 at 9. Storto, a defendant in the *Alban* litigation, did not file its suit until four years after the Albans handed Storto a document alleging that Exxon had been fraudulently concealing information related to the likelihood of a gas leak; tolling the statute of limitations is not justified. To hold otherwise would defeat a primary purpose of the statute: to promote judicial efficiency. *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 668, 464 A.2d 1020, 1027 (1983).

Had Storto undertaken some investigation after receiving the *Alban* complaint, it could have filed a very similar claim

---

[11] *Pappano*, 374 Md. at 351, 822 A.2d at 1219.

8

against Exxon, enabling *it*, like the *Alban* plaintiffs, to exercise "the powers of discovery" and identify the EECO issues long before Storto filed this suit. *See* ECF No. 32 Attach. 1 at 9. Instead, it waited more than three years after receiving the complaint to enter the June 12, 2009 tolling agreement. *See* ECF No. 32 Attach. 21. The claim was time-barred when filed. Summary Judgment will be granted for Exxon.

III. Conclusion

For the reasons stated above, Exxon's motion for summary judgment will be granted.

_____2/1/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge